(No. 65112.—

(No. 65336.—

CLAUDIA TZYSTUCK, Appellant, v. CHICAGO TRANSIT AUTHORITY, Appellee.—ELIZABETH DIMINSKIS, Appellee, v. CHICAGO TRANSIT AUTHORITY, Appellant.

*Opinion filed September 22, 1988.*

A. J. Hardiman, Ltd., of Chicago (A. J. Hardiman and Eugene C. Hardiman, of counsel), for appellant.

Hoffman, Burke & Bozick, of Chicago (Gary W. Bozick, Edmund J. Burke and Eileen M. Walsh, of counsel), for appellee.

Hoffman, Burke & Bozick, of Chicago (Edmund J. Burke, Gary W. Bozick, Eileen M. Walsh and Denise A. Perry, of counsel), for appellant.

Hofeld & Schaffner, of Chicago (Albert F. Hofeld and Howard Schaffner, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The appeals in Nos. 65112 and 65336 were consolidated for purposes of oral argument and disposition of the issue of whether a treating physician who will testify to a medical opinion at trial is an expert witness within the meaning of Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)).

The plaintiff-appellee in case No. 65336, Elizabeth Diminskis, individually and as plenary guardian of the estate and person of Victor Diminskis, brought suit for personal injury against the defendants-appellants Chicago Transit Authority (CTA) and Harold D. Clemons following an incident in which a CTA bus driven by Clemons struck and injured Victor Diminskis. The record

reflects that, prior to trial, the defendants, pursuant to Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)), requested the plaintiff to identify all expert witnesses who would testify at trial. The plaintiff responded that treating physicians would testify at trial, but did not specifically name Dr. Kelvin Von Roenn, a neurosurgeon who treated Victor Diminskis at Rush-Presbyterian St. Luke's Hospital. The plaintiff had previously disclosed Dr. Von Roenn's name in response to an interrogatory propounded by the defendant and had provided the defendants with the physician's medical records of the plaintiff. After the case was set for trial, plaintiff's counsel informed the defendants that he intended to call Dr. Von Roenn to testify and the trial court granted the defendant leave to depose the physician. At trial, Dr. Von Roenn testified over the defendants' objection, and gave his opinion as to the extent of Diminskis' injuries and his prospect for recovery.

The jury returned a verdict in favor of the plaintiff and against Clemons and the CTA, awarding $400,000 to Diminskis and $400,000 to Mrs. Diminskis for loss of consortium. The defendants appealed, claiming, *inter alia*, that the trial court should have barred the plaintiff's treating physician from testifying at trial because the plaintiff failed to disclose, pursuant to the defendants' Rule 220(b)(1) request, that the physician would testify as an expert witness. The plaintiff responded that she was not required to list a treating physician as an expert witness under Rule 220(b)(1).

The appellate court affirmed. (155 Ill. App. 3d 585.) It, however, first held that a litigant must disclose, pursuant to a Rule 220(b)(1) request, the identity of a treating physician who will testify at trial, but that the CTA had not been prejudiced by the plaintiff's failure to comply with the rule. Upon rehearing, the court stated that treating physicians do not have to be disclosed as expert

witnesses in response to a Rule 220(b)(1) interrogatory and that a party need not disclose an intention to call a treating physician to testify as an expert at trial. (155 Ill. App. 3d 585.) The appellate court also rejected the CTA's claim of several unrelated trial court errors. This court granted the defendants' petition for leave to appeal. 107 Ill. 2d R. 315.

The plaintiff-appellant in No. 65112, Claudia J. Tzystuck, individually and as the administrator of the estate of her deceased husband, Harry Tzystuck, brought a personal injury action for damages for injuries she sustained while attempting to board a bus owned and operated by the defendant-appellee CTA and driven by defendant-appellee Elanora Myadrecki. The trial court subsequently granted the CTA's motion to take a discovery deposition of Tzystuck's treating physician and ordered Tzystuck to pay the physician's deposition witness fees pursuant to Supreme Court Rule 220. The trial court then certified the following question to the appellate court, pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308):

> "Whether the plaintiff is responsible for the payment of fees to the plaintiff's treating physician pursuant to Supreme Court Rule 220 when a physician is subpoenaed by the defendant for the taking of his discovery deposition and the plaintiff intends to call this physician to testify at trial."

When the appellate court denied Tzystuck's petition to appeal, this court granted her petition for leave to appeal. 107 Ill. 2d R. 315.

Three questions arise in the combined appeals: (1) whether a treating physician who will testify to a medical opinion at trial is an expert witness within the meaning of Rule 220(b)(1); (2) whether Rule 220(c)(6) obligates a plaintiff to pay the deposition witness fees of that party's treating physician, when the deposition is taken at the instance of the defendant; and (3) whether claimed

errors by the trial court deprived the defendants in the Diminskis case of a fair trial.

# I

We first consider whether a treating physician who will testify to a medical opinion at trial is an expert witness within the meaning of Supreme Court Rule 220(b)(1). That rule provides:

"In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party ***." 107 Ill. 2d R. 220(b)(1).

The defendants in these consolidated appeals argue that a treating physician who will testify to a medical opinion at trial is an expert witness whose identity must be disclosed under Rule 220(b)(1). As support, they rely principally upon subsection (a)(1) of Rule 220, which defines an expert witness as:

"a person who *** possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion at trial." (107 Ill. 2d R. 220(a)(1).)

They assert that Rule 220(a)(1) does not distinguish among experts who reached an opinion through treating a patient and those who did so by other means, and accordingly, a treating physician who will give an opinion at trial is, they say, an expert witness whose identity must be disclosed in response to a Rule 220(b)(1) interrogatory.

It is true that Rule 220(a)(1) does not distinguish among expert witnesses based on how they form opinions, but appears to encompass all witnesses who might testify to an opinion at trial based on knowledge superior to that of the average person. Subsection (a)(1),

however, does not pertain to disclosure of expert witnesses or discovery of expert opinions, it simply defines the qualifications for an expert witness. The specific language in subsections (b) and (c) of Rule 220, which govern disclosure and discovery of expert witnesses, makes clear that treating physicians are not expert witnesses within the meaning of Rule 220(b)(1).

Subsection (b)(1) of Rule 220 requires disclosure of only "the identity of an expert who is *retained to render an opinion at trial,*" and subsection (c) requires "the party *retaining or employing* an expert witness" to comply with the rules governing discovery of such expert's opinions. (Emphasis added.) 107 Ill. 2d Rules 220(b)(1), (c).

Although the defendants argue that "retained" in Rules 220(b)(1) and (c) refers broadly to witnesses who are "requested" to give an opinion within their field of expertise, we consider it obliges litigants to disclose the identity and opinions only of those witnesses who are engaged for the purpose of giving an expert opinion at trial. It may be said that the connection between a medical expert who is "retained to render an opinion at trial" and the party to the suit may be litigation-related, rather than treatment-related. Treating physicians, on the other hand, typically are not "retained to render an opinion at trial" but are consulted, whether or not litigation is pending or contemplated, to treat a patient's physical or mental problem. While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any litigation. Such an opinion is not formed in anticipation of a trial, but is simply the product of a physician's observations while treating the patient, which coincidentally may have value as evidence at a trial. In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because

they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation.

We would note that our conclusion that treating physicians are not to be regarded as experts within the meaning of Rule 220(b)(1) is consistent with the committee comments to that rule. The comments indicate that the committee relied heavily upon certain of the Federal Rules of Civil Procedure in drafting Rule 220. (107 Ill. 2d R. 220, Committee Comments, at 355.) Rule 26(b)(4), the Federal counterpart to our Rule 220, relates to the discovery of the identity and the opinions of expert witnesses. That rule allows discovery of "facts known and opinions held by experts *** acquired or developed in anticipation of litigation or trial" only to the extent specified in that rule. Federal Rule 26(b)(4), like subsections (b) and (c) of our Rule 220, states that a party may, through interrogatories, require another party to disclose the identity of persons who will testify as expert witnesses at trial and the subject matter and substance of their expert opinions. See Fed. R. Civ. P. 26(b)(4)(A)(i).

The Federal advisory committee notes to Rule 26(b)(4) expressly caution, however, that the rule does not apply to "the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert witness should be treated as an ordinary witness." Fed. R. Civ. P. 26(b)(4), Advisory Committee Notes (1970 amendment).

The Federal decisions which have considered Rule 26(b)(4) have held that treating physicians are not within the scope of the rule because they acquire their facts and

opinions, not in anticipation of trial, but as actors and viewers of the subject matter that gave rise to the litigation. For example, in *Baran v. Presbyterian University Hospital* (W.D. Pa. 1984), 102 F.R.D. 272, the court held that Rule 26(b)(4) was not violated when the plaintiff's treating physicians testified at trial without prior disclosure of the expert opinions they gave. The court held that Rule 26(b)(4) did not apply to treating physicians because they acquired their knowledge as actors or viewers, rather than in anticipation of trial. To the same effect see 8 C. Wright & A. Miller, Federal Practice and Procedure §2033, at 258 (1970); *Sipes v. United States* (S.D. Cal. 1986), 111 F.R.D. 59; *Quarantillo v. Consolidated Rail Corp.* (W.D.N.Y. 1985), 106 F.R.D. 435; *Keith v. Van Dorn Plastic Machinery Co.* (E.D. Pa. 1980), 86 F.R.D. 458, 460.

Thus, Federal Rule 26(b)(4), like our Rule 220, does not require a party to disclose the identity or opinions of treating physicians who will testify at trial. Under both rules, treating physicians are subject to the discovery provisions which apply to ordinary occurrence witnesses. The similarities between the scope of discovery allowed under the Federal rules and that allowed under our supreme court rules ends there, however, for it would appear that the general discovery provision of the Federal rules requires a party to disclose the identity of treating physicians who will testify at trial, if an opponent requests such information. (See Fed. R. Civ. P. 26(b)(1); *Sipes v. United States* (S.D. Cal. 1986), 111 F.R.D. 59.) Our civil practice rules, on the other hand, provide that a party is not required to furnish opposing parties with the names of witnesses whom the party intends to use at trial (except that upon motion of any party, disclosure of the identity of expert witnesses must be made to all parties and the court in advance of trial). Ill. Rev. Stat.

1985, ch. 110, par. 2—1003; C. Nichols, Illinois Civil Practice §2705, at 368 (1987).

Our conclusion that treating physicians are not expert witnesses within the meaning of Rule 220 is logical in light of discovery obligations which Rule 220(c) imposes upon parties. Subsection (c) obligates the party "retaining or employing" an expert witness to respond to interrogatories regarding the subject matter of the expert's testimony, the expert's conclusions, opinions and the bases thereof, and the expert's qualifications. (107 Ill. 2d R. 220(c)(1).) The party retaining the expert must also continuously keep in touch with the witness in regard to his opinion and advise opposing parties of any changes in the opinion by seasonably supplementing answers to interrogatories propounded under the rule. (107 Ill. 2d R. 220(c)(3).) An expert who refuses or fails to satisfy the discovery obligations of Rule 220(c) is disqualified as a witness. 107 Ill. 2d R. 220(b)(1).

Rule 220(c) not unreasonably presumes that a litigant who retains an expert witness has control of that witness and will have the expert's cooperation in answering and supplementing interrogatories of opposing parties. A party generally does not have that ready access to or control over treating physicians, who, when involved in the litigation, are involved only because they did form an opinion while treating the patient which the litigant values as evidence at a trial. To construe Rule 220 to include treating physicians would unrealistically and unfairly oblige litigants to ensure that witnesses beyond their control comply with the extensive discovery obligations of subsection (c) at the risk of having a witness disqualified for failure to comply.

The defendants in the Diminskis case argue that the purposes of Rule 220 will be defeated if litigants are unable to obtain, before trial, the identity of treating physicians and the substance of the opinions which they will

give. As the committee comments to Rule 220 point out, the rule is to facilitate trial preparation and the evaluation of claims by eliminating the late or surprise disclosure of experts at trial. (107 Ill. 2d R. 220, Committee Comments, at 353-54.) There is no reason why a defendant should be surprised by the medical testimony of a treating physician at trial. Although treating physicians are not experts within the meaning of Rule 220, their identity is discoverable under Supreme Court Rule 201(b)(1) (107 Ill. 2d R. 201(b)(1)). That rule also requires parties to disclose the medical records of treating physicians so that opposing parties may discover the facts and data underlying the treating physician's opinion. (107 Ill. 2d R. 201(b)(1).) Moreover, litigants may seek a court order under Supreme Court Rule 204 if they decide that it is necessary to depose a treating physician for an adequate defense. 107 Ill. 2d R. 204(c).

The defendants in the Diminskis case have no ground for complaint that they were surprised by Dr. Von Roenn's medical testimony. The plaintiff disclosed the names of Dr. Von Roenn and other treating physicians more than a year before trial in response to the defendants' interrogatories. The plaintiff also informed the defendants that she would call treating physicians to testify at trial. The defendants were in possession of Dr. Von Roenn's medical records a year before trial and were allowed to depose Dr. Von Roenn before he was called as a witness. Furthermore, as the appellate court observed in its opinion, a review of Dr. Von Roenn's testimony reveals that he relied upon his own observations and experiences with the plaintiff, rather than on outside materials, in forming the medical opinion which he gave at trial.

## II

We next consider whether a plaintiff must pay the

deposition witness fees of a plaintiff's treating physician when the deposition is taken at the instance of the defendant. The plaintiff in No. 65112, Claudia Tzystuck, argues that Supreme Court Rule 204 obligates the defendants to pay the fees of the plaintiff's treating physician. Rule 204(c) provides:

"(c) Depositions of Physicians and Surgeons. *** Unless the physician or surgeon was retained by a party for the purpose of rendering an expert opinion at trial (see Rule 220(c)(6)), or unless otherwise ordered by the court, the fee shall be paid by the party at whose instance the deposition is taken." 107 Ill. 2d R. 204(c).

The plaintiff in the Tzystuck case argues that Rule 204 governs because treating physicians are not expert witnesses and that the rule obligates the defendant, at whose instance the deposition was taken, to pay the fees of the treating physician.

The defendants answer that treating physicians are expert witnesses, and that the trial court properly held the plaintiff responsible for paying the deposition fees of her physician pursuant to Rule 220(c)(6), which provides:

"(6) Unless manifest injustice would result, each party shall bear the expense of all fees charged by his expert witness or witnesses." 107 Ill. 2d R. 220(c)(6).

We have just rejected the notion that treating physicians are to be regarded as expert witnesses under Rule 220. The trial court in the Tzystuck case erred in concluding that Rule 220(c)(6) obligated the plaintiff to bear the deposition costs of the plaintiff's treating physician. Rule 204 obligates the party who takes a physician's deposition to pay the fees of that physician, unless the physician was retained for the purpose of rendering an expert opinion at trial, in which case Rule 220(c)(6) applies. Treating physicians are not retained for the purpose of giving an expert opinion at trial, but are consulted, without regard to litigation, to provide medical

treatment. Consequently, Rule 204, rather than Rule 220(c)(6), governs the payment of deposition witness fees to treating physicians.

## III

We next address the defendants' claim in the Diminskis case that there were trial court errors which call for a new trial. We consider the defendants' claims: (1) that the trial court erroneously ruled on the admissibility of certain evidence; (2) that the defense was prejudiced by the plaintiff's counsel's improper accusations and misrepresentations; (3) that plaintiff's counsel improperly cross-examined defense witnesses.

We first consider the defendants' claim that the trial court erred in barring them from introducing the discovery deposition of Mr. Diminskis into evidence at trial. The record shows that prior to the deposition, the plaintiff's counsel informed the defendants that, although Mr. Diminskis would submit to the deposition, the plaintiff was not waiving her right to assert that the injuries he suffered rendered him incompetent. Approximately 11 months after the deposition, Mr. Diminskis was declared incompetent and Mrs. Diminskis was appointed plenary guardian of his estate and person. Prior to trial, the trial court granted the plaintiff's motion *in limine* to bar the use of Mr. Diminskis' deposition because of incompetency, and the appellate court upheld the trial court's ruling. The defendants contend here that Mr. Diminskis was competent to testify at the time of the deposition.

A witness is competent to testify in a deposition if he or she has the capacity to observe, recollect and communicate the matter as to which he or she is called to testify. (*People v. Dixon* (1961), 22 Ill. 2d 513, 516.) In ruling on the motion *in limine*, the trial court stated that a review of the deposition demonstrated unquestionably that the plaintiff was disoriented and unable to recall the

date, time or circumstances of his being struck and injured. The court judged that Mr. Diminskis' inability to recall the incident rendered him incompetent to testify about that occurrence at the time of the deposition. The trial court also observed that the affidavits of the plaintiff's treating physician and the guardian *ad litem*, as well as the order of the probate division, confirmed its conclusion that Mr. Diminskis was incompetent to testify. The court specifically noted that it was not determining Mr. Diminskis' competency for all purposes, but was declaring only his deposition testimony inadmissible.

The decision as to the competency of a witness rests with the trial judge, and this court will not disturb a circuit court's determination that a witness is incompetent to testify absent a showing that the decision was an abuse of discretion. (See *People v. Garcia* (1983), 97 Ill. 2d 58.) The record shows that the trial court held that the plaintiff was incompetent to testify only after reviewing the deposition transcript and hearing extensive arguments from counsel. This court will not substitute its judgment for that of the trial court where no abuse of discretion is shown.

The defendants next claim that the court in the Diminskis case erroneously admitted an exhibit consisting of numerous "Equipment Inspection Request Forms" which showed that the bus which struck Mr. Diminskis was previously involved in 35 unrelated accidents. The defendants contend that this evidence was totally irrelevant and highly prejudicial.

Evidence is relevant if it tends to prove a fact in controversy or render a matter in issue more or less probable. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505.) Each party is entitled to present evidence which is relevant to its theory of the case, as well as evidence which shows conduct inconsistent with an opponent's theory. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 982.)

The plaintiff concedes that evidence of prior negligence and of accidents resulting from it is not admissible for the purpose of showing independent acts of negligence. (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127.) The plaintiff argues, however, that the exhibit was relevant for two distinct purposes.

First, the plaintiff contends that the evidence of prior accidents was admissible to prove that the dent in the right front corner of the subject bus was not caused by any other reported accident, and therefore was attributable to Mr. Diminskis' accident. We fail to see, however, why evidence that the subject bus was dented in this accident was relevant to any material issue in the case. The defendants never denied that the bus struck Mr. Diminskis. In fact, the defense counsel specifically stated in his opening argument that the contact with Diminskis was at the right front corner of the bus. The important issue in the case was whether Diminskis ran into the path of the oncoming bus, as the defendants claimed, or whether the bus veered to the left as it entered the intersection with its right front striking Diminskis as he stood on the median, as the plaintiff claimed. Evidence that the subject bus was dented as a result of the accident did not tend to prove the plaintiff's theory of the case, nor did it disprove the defendants' theory. Rather, the existence of a dent was simply a collateral fact which was not relevant to the material issue in the case. Evidence of a collateral fact is generally inadmissible, because it is likely to distract the jurors and draw their attention from the real issues in the case. (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001.) Consequently, we conclude that the exhibit was not admissible for the purpose of showing that the bus was dented.

The plaintiff argues, as an alternative answer, that the evidence was admissible for the purpose of laying

the necessary foundation for a missing-documents instruction. The evidence showed that in the unrelated accidents CTA employees on each occasion prepared an equipment inspection request form, which indicated whether the bus was damaged in the accident and whether the inspection revealed a defect in the bus. The CTA failed to produce an equipment inspection request form for the accident involving Mr. Diminskis. The plaintiff claimed that if the CTA had produced the form, it would have indicated that the disputed bus had a defect which the plaintiff claimed caused the accident; namely, the veering of the bus to the left when the driver applied brakes. The plaintiff points out that the trial court gave Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971), which permits a jury to draw an adverse inference when parties fail to produce evidence within their control at trial.

The introduction of the report forms into evidence, however, was not necessary to lay a foundation for a missing-documents instruction. Several CTA employees had previously testified that an equipment inspection request form was routinely prepared following an accident involving a CTA bus and should have been prepared in this instance.

Even if we assume, *arguendo*, that the exhibit was probative for this purpose, the potentially prejudicial effect of the evidence of accidents outweighed its minimal probative value. The trial court erred in admitting the exhibit into evidence.

Not every error, of course, will require reversal of a judgment. New trials should be ordered only when evidence improperly admitted appears to have affected the outcome of the trial. (*J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115.) Here, we consider the erroneous admission of the exhibit did not affect the result

of the trial. The circumstances of the accidents were not discussed in detail at trial and the jury was not led to believe that the CTA was responsible for the other accidents. Moreover, the introduction of the reports may have benefited the CTA, because they demonstrated that the bus which struck Mr. Diminskis did not have a history of pulling to the left when the brakes were applied, as the plaintiff claimed. Therefore, we conclude on balance that the admission of the exhibit did not unduly prejudice the defense.

The defendants urge too that the judgment should be reversed because the plaintiff's attorney made improper comments which deprived them of a fair trial. They first say that the plaintiff's counsel improperly suggested that the CTA engaged in subornation of perjury during his cross-examination of Wilson Freedman, a defense witness, who was a passenger on the bus at the time of the accident. The record shows there was inconsistency between Freedman's testimony upon direct examination and statements he made shortly after the accident.

Freedman's trial testimony directly supported the CTA's position that Diminskis ran into the path of the bus and froze momentarily in the middle of the street when he saw the bus, and that the driver of the CTA bus could not avoid hitting him. His testimony contradicted that of two witnesses for the plaintiff who testified that Diminskis was standing on the median strip, rather than running across the street, when the CTA bus struck him. During cross-examination, the plaintiff's attorney attempted to impeach Freedman's credibility by proving that the witness made statements shortly after the accident which were inconsistent with the statements he made at his deposition and at trial. On cross-examination, Freedman admitted that he met with CTA attorneys prior to the deposition at which he changed his statement. Diminskis' counsel then asked Freedman

whether the CTA had asked him to "correct" his first statement. The trial court overruled the defendants' objection to the question. On recross, Diminskis' counsel again questioned Freedman about the inconsistencies in his statement. The trial court sustained defense counsel's objection to this statement and admonished the jury to disregard the questioning. The defendants contend that the trial judge committed reversible error in permitting the plaintiff's attorney to suggest that the CTA was engaged in subornation of perjury.

The character and scope of cross-examination and rebuttal rest largely within the sound discretion of the trial court, and a party may cross-examine a witness about matters which explain, modify or discredit his or her testimony on direct examination. (*People v. Lyles* (1985), 106 Ill. 2d 373, 402; *People v. Emerson* (1983), 97 Ill. 2d 487, 497.) The defendants had an opportunity to correct, and attempted to do so, any unfavorable inference left by the plaintiff's cross-examination of Freedman on redirect examination. Moreover, the trial court, as stated, immediately admonished the jury to disregard any statement or question asked by plaintiff's attorney which may have suggested that there was any suggestion to Freedman by CTA attorneys to change his statement. Considering the unexplained contradictory testimony of the witness and the prompt sustaining of the defendants' objection, we conclude that this cautionary instruction was sufficient to remove any prejudice which may have resulted from the allegedly improper questions.

The defendants finally argue that the plaintiff's counsel made an inflammatory remark during his rebuttal to the defendants' closing argument. The defendants concede that they did not object to the remark, but argue that no objection was necessary as the inflammatory remark constituted plain error.

We agree that the remark was improper, but it is clear that it was defense counsel who introduced the prejudicial issue into the case. It is only reasonable to say the defendants cannot contend that the improper remark deprived them of a fair trial when the remark was invited by defense counsel's clearly improper cross-examination of Mrs. Diminskis. Our decisions have repeatedly held that a defense attorney cannot provoke a reply to his own improper argument and then claim error. *People v. Stock* (1974), 56 Ill. 2d 461; *People v. Weisberg* (1947), 396 Ill. 412.

The judgment of the appellate court in No. 65336 (Diminskis) is affirmed, and the judgment of the circuit court in No. 65112 (Tzystuck) is reversed and that cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*No. 65112 — Judgment reversed;*
*cause remanded.*
*No. 65336 — Judgment affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.