DAVID R. HILL *et al.*, Plaintiffs-Appellants, v. BEN FRANKLIN SAVINGS & LOAN ASSOCIATION, Defendant-Appellee.

Second District   No. 2—88—0268

Opinion filed December 8, 1988.—Rehearing denied January 11, 1989.

Sisul, Marks & Fleming, of Downers Grove (Thomas J. Sisul, of counsel), for appellants.

Rathje, Woodward, Dyer & Burt, of Wheaton (Gary L. Taylor, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, David R. Hill and Linda L. Hill, appeal from a judgment for defendant, Ben Franklin Savings & Loan Association (Ben

Franklin), entered at the close of plaintiffs' case by the circuit court of Du Page County in a nonjury case (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110) in their action for breach of an agreement to refinance plaintiffs' indebtedness to Ben Franklin and for recovery of interest paid on certain promissory notes they purportedly did not sign.

Plaintiffs raise two issues on appeal: (1) whether plaintiff, David Hill, was erroneously prohibited from testifying to the value of his property, and (2) whether the circuit court erred in denying plaintiffs the effective assistance of counsel by prohibiting David Hill from consulting with his counsel during a weekend recess which interrupted his testimony.

A bench trial was held on counts I and IV of plaintiffs' third amended complaint. In count I, plaintiffs sought recovery for losses incurred when, due to Ben Franklin's alleged breach of an agreement to refinance certain mortgages, plaintiffs were forced to sell the mortgaged properties at below market value. Count IV alleged that certain promissory notes purportedly executed by plaintiffs bore forged signatures and sought, among other relief, imposition of a constructive trust upon interest paid on the notes.

Evidence adduced at trial establishes the following facts. David Hill was involved in the business of building single-family homes in the late 1970's. Hill did business individually under the name Scott Builders and in a partnership with Larry Bischman operating under the name Hillman Development.

Beginning in 1978, Hill obtained financing for various construction projects from Ben Franklin. The procedure for financing a project was as follows. Hill would present Ben Franklin with a plan to construct a home on a particular lot. Ben Franklin would then appraise the value of the lot with the proposed improvements and would extend to Hill a line of credit, secured by a mortgage on the lot, for a portion of the construction costs. Hill obtained additional funding with loans secured by assignment of the beneficial interest in his home at 830 Jay Drive, Downers Grove.

At the closing of the sale of a house at 6201 Sleepy Hollow, Lisle, in September 1980, Hill informed Bernard Adams, then an officer of Ben Franklin, that he thought that "pay off letters" issued by Ben Franklin showed greater indebtedness than Hill's records indicated. Hill demanded a full accounting on all construction loans. Hill testified that he repeated his request for an audit several times. Hill testified that in February 1981, he was contacted by Elliot Lease, Ben Franklin's comptroller, who requested that they meet as soon as possible. Also present at the meeting which followed were Bernard Adams and

Joseph Gasior, chairman of Ben Franklin, and two unidentified individuals.

At the meeting, Joseph Gasior told Hill that all the construction loan accounts showed a negative balance and were delinquent. Hill testified that he responded that "loan in process" cards maintained by Ben Franklin, documenting the status of the construction loan accounts, showed the accounts to have a positive balance. According to Hill, Gasior replied that Adams had deposited funds from Ben Franklin Service Corporation in the accounts without anyone's knowledge. Gasior then showed Hill four notes purportedly executed by Hill totalling $80,000, with approximately $20,000 in accrued interest.

Hill testified that a full audit of all the construction loan accounts was conducted, disclosing that Adams had engaged in improper accounting of loan transactions, debiting construction payouts to loan accounts for different houses. The audit further disclosed that Adams had placed funds belonging to Ben Franklin Service Corporation into Hill's accounts and that Adams had hidden the four unsecured notes.

On March 23, 1981, Hill and Ben Franklin executed a written agreement concerning payment of Hill's indebtedness to Ben Franklin. At the time of the agreement, three homes built by plaintiffs and financed by Ben Franklin remained unsold. These homes were located at 908 Hyde Park Lane, Naperville; 6217 Sleepy Hollow, Lisle; and 6205 Sleepy Hollow, Lisle. A contract for the sale of a home at 6209 Sleepy Hollow, Lisle, had been executed, but the closing had not yet occurred. The agreement to refinance Hill's indebtedness required Hill to execute a note for $40,000 payable in two months bearing interest at 15% which would be paid from the proceeds of the sale of 6209 Sleepy Hollow. The agreement also required Hill to execute a note for $60,000 collateralized by assignment of certain second mortgages held by Hill in the amount of $120,000.

The agreement further provided as follows:

"IV. All existing mortgages at Ben Franklin Savings & Loan Association on which David R. Hill and Linda L. Hill, his wife, are the sole Obligators shall be recast with mortgages on the current outstanding balances with terms as follows:

a. Said mortgages shall bear interest at the rate of 15% per annum with interest payable monthly.

b. Said mortgages shall have a one year maturity."

Hill testified that he signed two new notes pursuant to the agreement. Hill was then given the four unsecured notes, at which point he claims he discovered that his signature had been forged on the notes. Hill testified that thereafter he was presented with four new mort-

gage documents to sign. Hill testified that, upon reviewing the tendered documents, he believed they were not in compliance with the agreement. Specifically, Hill noted that the documents contained a waiver of the right to redemption on his home. Hill also objected to an affidavit stating that a lot located at 11 Shelbourne in Oak Brook had been purchased for resale because, according to Hill, he had in fact purchased the lot for personal use. Hill had, however, executed a similar document in connection with the original loan on 11 Shelbourne. Hill was told by Roseann Huston, an officer of Ben Franklin, that Gasior wanted Hill to sign the documents as drafted and was told that they would be changed later. Hill refused to sign the documents. The following day, Hill was told that Joseph Gasior wanted the documents signed as they had been presented. Hill thereafter consulted with an attorney, who mailed Gasior a letter detailing Hill's objections to the mortgage documents. Testimony at trial indicates that Gasior sent a letter in reply. However, there is no evidence in the record as to the contents of Gasior's letter. Ben Franklin then instituted foreclosure proceedings on all the mortgaged properties in June and July of 1981.

With the foreclosure proceedings pending, plaintiffs filed this action initially seeking preliminary and permanent injunctive relief. Plaintiffs then voluntarily sold the mortgaged lots and amended their complaint seeking damages. The home at 6217 Sleepy Hollow, which had been listed for sale since October 1980, was sold in November 1981 for $150,000. The home at 908 Hyde Park had been listed since February 1980 and was sold in June 1981 for $116,000. The home at 11 Shelbourne was sold in the fall of 1984 for $95,000. Plaintiffs' home at 830 Jay was sold in December 1981 for $140,000.

At trial, plaintiffs sought to call Thomas Collins, a real estate appraiser, to testify as to the fair market value of the properties. Ben Franklin objected to Collins' testimony on the basis of plaintiffs' failure to disclose Collins as an expert witness as required by Supreme Court Rule 220 (107 Ill. 2d R. 220). Plaintiffs then sought leave to recall David Hill to testify. As a condition of being allowed to recall Hill, the court stated that Hill could not consult with his attorney during the period of his testimony. Shortly after Hill was recalled as a witness, a recess was taken for the weekend during which Hill did not communicate with his attorney. When Hill's testimony commenced, he was barred from testifying as to his opinion of the value of his property on the basis that he had not been disclosed as an expert witness as required by Rule 220.

At the close of plaintiffs' evidence, Ben Franklin moved for judg-

ment in its favor arguing as to count I that plaintiffs had not offered proof of damages and additionally that the evidence did not show that Ben Franklin had breached the agreement. The trial judge concluded, without explanation of his reasons, that "plaintiff[s'] evidence taken in its light most favorable to plaintiff[s] could not support a judgment in plaintiffs' favor," and granted Ben Franklin's motion for judgment on both counts I and IV.

On appeal, plaintiffs only raise issues relating to the finding at the close of their evidence for Ben Franklin on the breach of contract count and have not pursued the ruling as to count IV.

Plaintiffs first contend that the circuit court erred in prohibiting plaintiff David Hill from testifying to the actual market value of his properties that he had sold, which ruling prevented him from proving damages, thereby resulting in a directed finding against plaintiffs at the close of their evidence. The circuit court had barred Hill's testimony based upon Ben Franklin's objection that Hill was testifying on this subject as an expert witness and had not been disclosed pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). Plaintiffs maintain that David Hill is qualified to express an opinion as to the value of his real estate solely because he is an owner and deemed to have knowledge about the property. While Ben Franklin does not dispute this proposition generally, it argues that Hill was offered as an expert witness on value and he must be disclosed as an expert witness pursuant to Rule 220.

■ Plaintiffs correctly note that the general rule in Illinois is that an owner of land is competent to render an opinion as to the value of his land. (*American National Bank & Trust Co. v. City of North Chicago* (1987), 155 Ill. App. 3d 970, 508 N.E.2d 1111; *Department of Transportation v. Harper* (1978), 64 Ill. App. 3d 732, 381 N.E.2d 843.) Ownership of land usually indicates knowledge of the price paid for land, the income generated by it, and potential uses of the land, such that the owner likely has a reasonably good idea of the land's value. (*American National Bank & Trust Co.*, 155 Ill. App. 3d at 973, 508 N.E.2d at 1113.) However, the rule is not absolute. (*Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846.) A landowner may be shown to be incompetent to testify where it is affirmatively shown that special circumstances exist which indicate that he is unfamiliar with facts which give the property value. (*American National Bank & Trust Co.*, 155 Ill. App. 3d at 973, 508 N.E.2d at 1113; *Harper*, 64 Ill. App. 3d at 735, 381 N.E.2d at 846.) The party opposing the landowner-witness may make this affirmative showing on cross-examination, revealing the absence of probative value in the testimony. *American Na-*

*tional Bank & Trust Co.*, 155 Ill. App. 3d at 973, 508 N.E.2d at 1113.

■■ Thus, absent the required showing of special circumstances, David Hill was qualified to express his opinion as to the value of his land. The record in this case reveals no such circumstances were shown by Ben Franklin.

The thrust of Ben Franklin's argument is, however, that a landowner giving his opinion as to the value of his land testifies as an expert and, therefore, failure to disclose pursuant to Supreme Court Rule 220 properly barred Hill's testimony.

Supreme Court Rule 220 defines expert as follows:

> "An expert is a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation ***." (107 Ill. 2d R. 220(a)(1).)

An individual is qualified to give expert testimony if, "because of his skill, training and experience he is better able to form an accurate opinion as to the issue in question than is the average person in the community." (*In re M.B.C.* (1984), 125 Ill. App. 3d 512, 515, 466 N.E.2d 273, 276.) However, the rationale for allowing landowners to state their opinion as to the value of their land is not, as Ben Franklin suggests, that they qualify as experts. Landowners do not necessarily possess any special education or training in the area of land valuation. Furthermore, a landowner has greater experience only insofar as he is better acquainted with his particular land than is the average person. A landowner's familiarity with his own land should not, in and of itself, constitute expertise. Furthermore, Cleary and Graham discuss an owner's testimony as to land value as an illustration of admissible lay witness opinion testimony. E. Cleary & M. Graham, Handbook of Illinois Evidence §§701.1, 701.3, at 445, 446-48 (4th ed. 1984).

■■ Even if Hill's offered testimony was to be considered as expert testimony, it would not be barred by Rule 220. Rule 220(b)(1) provides that "the identity of an expert who is *retained* to render an opinion at trial *** must be disclosed." (Emphasis added.) (107 Ill. 2d R. 220(b)(1).) In *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234, 529 N.E.2d 525, 528, it was held that Rule 220(b)(1) "obliges litigants to disclose the identity and opinions only of those witnesses who are engaged for the purpose of giving an expert opinion at trial." In *Tzystuck*, the supreme court stated that treating physicians testifying at trial are not subject to the disclosure requirements of Rule 220(b)(1) because they are consulted for treatment purposes whether or not litigation is pending or contemplated and do

not develop their opinions in anticipation of litigation. (124 Ill. 2d at 234, 529 N.E.2d at 528.) The court noted in *Tzystuck* that a treating physician's opinion is, in this respect, similar to that of an occurrence witness who testifies not because he was retained by a party who expected him to develop and give a particular opinion at trial, but because he "witnessed or participated in the transactions or events that are part of the subject matter of the litigation." (124 Ill. 2d at 234-35, 529 N.E.2d at 528-29.) Likewise, we conclude that a party to a suit cannot be said to be retained to render an opinion at trial. A party is not engaged for the purpose of giving expert opinion at trial, but rather is a participant in the transaction that is the subject matter of the litigation. A party is subject, however, to the expert witness discovery provision of Rule 220(c)(4) which gives an opposing party the opportunity to discover a party's expert opinion. 107 Ill. 2d R. 220(c)(4).

Ben Franklin correctly points out that a party may be an expert under the definition of that term in Rule 220(a)(1) (107 Ill. 2d R. 220(a)(1)). However, Rule 220(a)(1), which defines the qualifications of an expert witness, does not pertain to disclosure. (*Tzystuck*, 124 Ill. 2d at 233-34, 529 N.E.2d at 528.) Thus, the circuit court erroneously barred David Hill's testimony as to the market value of his properties.

Ben Franklin maintains, however, that even if plaintiffs had presented evidence as to the value of the properties involved, the circuit court's finding for it at the close of plaintiffs' case was not against the manifest weight of the evidence for several reasons. Before addressing Ben Franklin's arguments in this regard, we briefly state the standard to be applied by the circuit court in determining a motion by a defendant for finding in his favor at the close of plaintiff's case in a bench trial brought pursuant to section 2—1110 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110) and by the appellate court in reviewing the decision of the circuit court.

■ The circuit court here erroneously employed the standard applicable to a directed verdict in jury cases (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), whereas the standard to be used by the circuit court in nonjury cases is set forth in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43, in pertinent part, as follows:

> "In ruling on the motion, the court is to weigh the evidence and, if the ruling is favorable to the defendant, enter a judgment dismissing the action. (Ill. Rev. Stat. 1977, ch. 110, par. 64(3); *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57[, 349 N.E.2d 399].) The court must consider all of the

evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence. Contrary to the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494[, 229 N.E.2d 504]), the court is not to view the evidence in the light most favorable to the plaintiff. \*\*\*
\*\*\*

The *prima facie* case standard ordinarily applies to both jury and nonjury cases. In any case in which the plaintiff has failed to make out a *prima facie* case, *i.e.*, he has not presented at least some evidence on every element essential to his cause of action, the defendant is entitled to judgment in his favor as a matter of law. When a defendant, as here, moves for judgment under section 64(3), the trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case. If he has not, the court should, without more, grant the motion and enter judgment in the defendant's favor.

If, however, the plaintiff has made out a *prima facie* case, the trial judge, in his role as the finder of fact, must then weigh the plaintiff's evidence as aforesaid. This weighing process may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case, in which event the court should grant the defendant's motion and enter judgment in his favor. On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." (81 Ill. 2d at 154-55, 407 N.E.2d at 44-45.)

On appeal, the decision of the circuit court should not be reversed unless it is contrary to the manifest weight of the evidence. 81 Ill. 2d at 154, 407 N.E.2d at 44.

■ Returning to Ben Franklin's contentions that the finding in its favor at the close of plaintiffs' case was not against the manifest weight of the evidence, we address initially Ben Franklin's brief assertion that the sales price of the four properties sold reflects the actual value of the properties and the circuit court could conclude that any claim for lost profits was speculative and unreasonable. Of course, the circuit court improperly excluded plaintiffs' proffered testimony of the value of these properties and, therefore, could not have applied the test set forth in *Kokinis*. Plaintiffs' theory of recovery is that Ben Franklin's failure to recast plaintiffs' mortgages entitled plaintiffs to

sell the properties in mitigation of damages which would be caused if plaintiffs allowed the properties to be foreclosed upon. To the extent such sales failed to yield full market value, plaintiffs arguably would be entitled to recovery. As the circuit court did not consider this evidence, the finding for Ben Franklin cannot be affirmed on this basis.

■ Ben Franklin, citing the Restatement (Second) of Contracts §351, comment e, also contends that the proper measure of damages for breach of a contract to lend money is the difference between the interest rate plaintiffs contracted to pay and the actual rate plaintiffs were compelled to pay to secure financing and therefore Ben Franklin was entitled to. a finding in its favor at the close of plaintiffs' evidence because plaintiffs submitted no such proper evidence of damages. Plaintiffs respond that, under the Restatement, where it is foreseeable to the lender that substitute financing will be unavailable, the lender may be liable for foreseeable actual damages resulting from the breach. (See Restatement (Second) of Contracts §351, comment e (1981).) The parties have not cited, nor have we found, any Illinois cases defining the proper measure of damages for breach of a contract to lend money. However, assuming the Restatement rule is applicable to this transaction, plaintiffs presented sufficient evidence that Ben Franklin knew the purported breach of the agreement and immediate institution of foreclosure proceedings on the properties might make other financing difficult to obtain. A finding against plaintiffs at the close of their evidence was against the manifest weight of the evidence on this contention as well.

■ Lastly, Ben Franklin maintains that there was ample evidence to support a finding in its favor that it did not breach the agreement. As noted earlier, the trial court did not specify the reasons for the finding for Ben Franklin at the close of plaintiffs' case. Ben Franklin's two-paragraph appellate argument, without citation of authority, does not present any legal basis to support the finding in its favor. On the other hand, plaintiffs adduced evidence that the agreement was breached in two respects. Without expressing any opinion on the ultimate merits of the breach question, we find that uncontroverted evidence of a breach was presented and Ben Franklin has failed to advance any argument which would support a finding in its favor on this basis.

For the foregoing reasons, the finding for Ben Franklin at the close of plaintiffs' case was against the manifest weight of the evidence, and the cause must be reversed and remanded. Although the general rule upon remandment is that the trial shall resume as if Ben Franklin's motion had been denied (*Kokinis*, 81 Ill. 2d at 156, 407

N.E.2d at 46), here, because plaintiffs were improperly disallowed from presenting David Hill's testimony of the value of his properties, trial shall resume with Hill's testimony on this point. As the proffer of the testimony in the record indicates that a *prima facie* case can be made, the trial court will only have to determine, after weighing the evidence of Hill's valuation testimony whether the *prima facie* case has been negated. If not, the trial shall resume with Ben Franklin's portion of the case.

In view of our disposition of the case on the first issue raised on appeal, we need not address in detail the second basis plaintiffs argue for reversal that the circuit court erred in prohibiting plaintiff David Hill, when recalled to testify, from consulting with his attorney during a recess in his testimony. Plaintiffs claim that, when a civil litigant is prevented from consulting with his counsel during the course of trial, reversal is required regardless of prejudice.

■ Suffice it to say that in *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 377 N.E.2d 1125, the appellate court did not adopt the rule for civil cases that is applicable in criminal cases, which holds that the right of an accused to discuss his case with his counsel is so fundamental that it is absolute and no showing of actual prejudice is necessary where it has been denied. (See *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96.) The appellate court noted in *Stocker Hinge* that the trial court does not have "unlimited rights in this type of situation in a civil case" and there may be "circumstances in civil cases in which extreme orders by a trial court regarding communication between lawyer and client would result in prejudicial error." (*Stocker Hinge*, 61 Ill. App. 3d at 647, 377 N.E.2d at 1134.) Thus, in civil cases the trial judge does have discretion in this area subject to a finding of abuse where a litigant can show prejudice.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

LINDBERG, P.J., and UNVERZAGT, J., concur.