DAVID J. UHRHAN, Plaintiff-Appellant, v. UNION PACIFIC RAILROAD COMPANY, Defendant-Appellee.

Fifth District   No. 5—91—0532

Opinion filed July 14, 1992.

Roger C. Denton, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of Belleville, for appellant.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, David J. Uhrhan, brought an action in the circuit court of St. Clair County to recover damages for personal injuries he sustained while employed as a switchman by defendant, the Union Pacific Railroad Company (the Railroad). Plaintiff claimed that his injuries resulted from the Railroad's negligence in failing to provide him with a safe place to work. He sought recovery under the Federal Employers' Liability Act (45 U.S.C.A. §51 *et seq.* (West 1986)), and a verdict was ultimately returned in his favor following a jury trial.

The jury determined that plaintiff had sustained $17,000 in damages, but it reduced his recovery to $10,200 after concluding that he was 40% contributorily negligent. (45 U.S.C.A. §53 (West 1986).) The circuit court then entered judgment on the verdict and denied plaintiff's post-trial motion. Plaintiff now appeals. There is no dispute as to the Railroad's liability. The sole issue before us is whether plaintiff is entitled to a new trial regarding his damages. We hold that he is.

■ Plaintiff correctly argues that the circuit court erred in allowing the jury to consider the Railroad's claim that he was contributorily negligent. Although a defendant in an FELA case is entitled to have the jury instructed on contributory negligence if there is any evidence to support the theory, it is also true that a defendant is obligated to produce evidence of the plaintiff's lack of due care before a contributory negligence instruction can be given. (*Gish v. CSX Transportation, Inc.* (7th Cir. 1989), 890 F.2d 989, 992.) The Railroad here failed to meet that obligation.

The record shows that plaintiff was injured while relaying lantern signals during switching operations at one of the Railroad's train yards. The procedure was not an easy one. It required plaintiff to keep a constant vigil for lantern signals from a fellow crew member located at the back of the train, where cars were being added and disconnected. Plaintiff would relay those signals with a lantern of his own to a third crew member, who would, in turn, convey them to the train's engineer so that the train could be moved properly and without danger to the crew member responsible for actually coupling and uncoupling the cars.

The track was curved and the train was over half-a-mile long. As a result, plaintiff had to keep moving alongside the tracks in order to remain in a position where he could still see and be seen by his coworkers as the switching took place. The Railroad had previously hired workers to keep the area alongside the tracks free of debris, but it had discontinued the practice as a cost-cutting measure. Added to these difficulties was that plaintiff had to do his job in near darkness. At the time of the incident giving rise to this litigation, he was on duty after midnight, and there were no lights to illuminate the yard. Plaintiff had just relayed a signal and was watching for the next when, still having to walk along and still in darkness, he tripped on a large section of heavy, loose wire and fell onto a broken railroad tie, injuring his knee.

■ The Railroad did have a safety rule requiring workers to be on the lookout for tripping hazards and to correct or report those they observed, but that rule can have no application here. While car-

rying out switching operations, plaintiff's responsibility was to watch the other signal lanterns. The safety of his co-workers depended on it. Given this, and in view of the darkness and the constant need to keep moving, plaintiff cannot reasonably have been expected to be more vigilant. Indeed, under the circumstances present here, watching more carefully where he was going was simply not a viable alternative for plaintiff. This is why it was so important that the area be kept free of debris, which it evidently no longer was.

The Railroad suggests that plaintiff might nevertheless be faulted for not complying with the safety rule because he did not check the area for hazards before commencing the switching procedure. As we have noted, however, the rule required only that workers keep an eye out for tripping hazards, and if they happened to see one, they were supposed to correct it or report it. Nothing in the rule obligated workers to go searching for such hazards before beginning their duties, especially at night, in the dark, with only the dull light of a signal lamp as a guide.

The concept of contributory negligence therefore has no applicability under the facts of this case. If anything, what is at issue here is the doctrine of assumption of risk. That, however, is no defense to an FELA action. (45 U.S.C.A. §54 (West 1986).) Accordingly, it was error to instruct the jury on contributory negligence, and the jury's finding that plaintiff was 40% contributorily negligent cannot stand.

In a proper case, we might be able to cure this error merely by setting aside the adjustment for contributory negligence and allowing plaintiff the full damages found by the jury. That solution will not work here, however, for the jury's basic damage award is itself tainted by another error, namely, the introduction, over plaintiff's objection, of the testimony of Dr. Edwin Carter.

■ Dr. Carter was retained by the Railroad to examine plaintiff and to give an expert opinion at trial regarding plaintiff's medical condition. There is no dispute that Dr. Carter was subject to the disclosure rules specified in Supreme Court Rule 220(b)(1) (134 Ill. 2d R. 220(b)(1)), nor is there a dispute that the required disclosure was not made by the Railroad in the time set forth by the rule. When plaintiff raised an objection to his testimony, the circuit court should therefore have disqualified Carter as a witness. Such disqualification was mandatory. (*Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 980, 572 N.E.2d 1169, 1186.) What the court did instead was give plaintiff the option of continuing the trial date in order to cure the time problem. This was improper. (*Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 226, 511 N.E.2d 974, 982.) A party should not be forced

to suffer a postponement of his day in court in order to accommodate a manifest violation of the discovery rules by the opposing party.

The Railroad contends that even if erroneous, the admission of Dr. Carter's testimony was harmless because it was merely cumulative of the testimony of Dr. Forbes McMullin, another medical witness in the case. We disagree. To characterize Carter's testimony as cumulative assumes that it possessed no independent significance, *i.e.*, that it added nothing additional that might have materially altered the outcome of the litigation. (See *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 246, 470 N.E.2d 551, 560.) No such assumption can be made here.

At trial, the jury heard the testimony of a third medical witness, Dr. Marvin Rosecan. Although both McMullin and Rosecan were called by plaintiff, McMullin, who did the surgery on plaintiff's injured knee, and Rosecan, who treated him following the surgery, had substantially different opinions regarding plaintiff's postsurgical condition. McMullin felt that plaintiff was free of permanent disability, while Rosecan opined that he would continue to suffer pain and degenerative joint problems as a result of the accident.

How the jury assessed the respective positions of these two doctors was obviously central to plaintiff's claims for future pain and suffering and future lost earnings. From the itemized verdict form, which set future lost earnings at zero, it is evident that McMullin's view carried the day. This result was surely due, in significant measure, to Dr. Carter's testimony, which contradicted Rosecan's position just as it supported that of McMullin. Indeed, among this triad of medical doctors, Carter may well have been regarded by the jury as the tie breaker. In light of this pivotal role, the erroneous inclusion of Dr. Carter's testimony was scarcely harmless.

For the foregoing reasons, we affirm the circuit court's judgment to the extent that it found the Railroad liable, but we reverse its damage award and remand for a new trial limited solely to the question of damages.

Affirmed in part; reversed and remanded in part with directions.

RARICK and W. LEWIS, JJ., concur.