JOE L. THOMPSON, Plaintiff-Appellee, v. ILLINOIS POWER COMPANY *et al.*, Defendants-Appellants (Koehring Bantam Division, Defendant-Appellee).

Fifth District   No. 5—91—0323

Opinion filed November 20, 1992.

GOLDENHERSH, P.J., dissenting.

Theodore J. MacDonald, Jr., and J. Todd Hayes, both of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellant Illinois Power Company.

Stephen L. Corn, Kenneth F. Werts, and Nancy R. Kuhnke, all of Craig & Craig, of Mattoon, for appellant Tomcal Contracting, Inc.

John W. Bell and William G. Beatty, both of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Koehring Bantam Division.

Bruce N. Cook, of Belleville, for appellee Joe L. Thompson.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff sustained an electrical shock while climbing off a crane that had become entangled in a high-voltage line. Plaintiff went to trial against three defendants, Koehring Bantam Division, manufacturer of the crane, TomCal Contracting, Inc. (TomCal), owner/operator of the crane, and Illinois Power Company (Illinois Power), owner of the electrical line. Plaintiff sought actual and punitive damages against Koehring Bantam Division and Illinois Power. Plaintiff sought only actual damages against TomCal, which had admitted liability before trial. The jury found Koehring Bantam Division not liable, returned a verdict of $1,600,000 against TomCal and Illinois Power, and assessed the latter two defendants' culpability at 99% and 1%, respectively. Defendants TomCal and Illinois Power appeal the plaintiff's judgment, and defendant TomCal also appeals from the jury's denial of its contribution claim against Koehring Bantam Division.

Defendants raise several issues including the late disclosure of an expert witness and the court's direction of a verdict on the question of comparative negligence. Since we reverse on these two points, there is no need to discuss the remaining issues.

On the day of plaintiff's injury TomCal was removing a series of concrete barriers from a road construction site. Tom Caldieraro, president of TomCal, was operating the crane, and plaintiff was in the crane's rear cab. The crane was used to lift the barriers from the ground and to place them on a flatbed truck located a few feet north of the crane. The approximate locations of the vehicles and most of the workers involved are shown in exhibit A. Illinois Power owned the high-voltage lines shown in the diagram.

## EXHIBIT A

After Tom Caldieraro had loaded a few of the barriers onto the truck, he saw Mr. Giloman, the laborer who hooked up the barriers, fall to the ground and curl up. (Giloman is not shown on the diagram; he was a little north of the area shown.) Caldieraro realized that the crane boom had contacted the electrical lines and raised the boom in an attempt to clear the contact. When this attempt was unsuccessful, Caldieraro jumped clear of the crane. At the time Caldieraro jumped, the tires beneath the operator's cab were on fire.

During these maneuvers plaintiff was in the rear cab of the crane, and he was facing south waiting for Caldieraro to signal him to move the crane to a new location. Plaintiff first became aware of a problem when he looked in his outside rearview mirror and saw the tires on fire. At approximately the same time plaintiff saw Caldieraro jump from the crane. Plaintiff then opened the door to get out, and, as his foot neared the ground, he felt the current surging through his body.

Plaintiff could have seen that the crane had contacted the line if he had turned around and looked up. Plaintiff testified he was unaware of the fact that the crane had contacted the line when he left the crane. Defendant Koehring Bantam Division's exhibit 9, a booklet of "Rules on Safety" for the operation of cranes, warned about the dangers of operating near overhead lines and provided that, if a power line was hit, the occupants of the crane should:

> "*stay inside the cab until line is cleared or power is shut off[;]
>
> *if you must leave the cab, be sure to jump completely clear of the machine."

After plaintiff testified and was cross-examined about his ability to return to work, Dan Gruber was called to the stand. Defendants objected to Gruber's testimony because he had not been disclosed either as an ordinary witness or as an expert under Supreme Court Rule 220 (134 Ill. 2d R. 220). The court overruled the objection, and Gruber was allowed to testify to the current working agreement (which defendants had offered to stipulate to) and that a person with plaintiff's limitations could not do the work of an oiler.

Before turning to the substantive issues in the case, we will address TomCal's *forum non conveniens* argument. Plaintiff originally filed this case in Madison County, but after some months he voluntarily dismissed it and refiled it in neighboring St. Clair County. Defendants filed *forum non conveniens* motions which were denied, and TomCal raises the denial on appeal.

■■ Trial courts have broad discretion in ruling on *forum non conveniens* motions although their ruling can be reversed for an abuse of that discretion. (*Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 506 N.E.2d 1291.) This case involves an accident which happened in Madison County and an injured plaintiff from St. Clair County. Seventeen witnesses testified, seven were from St. Clair County, three were from Madison County, one from Macoupin County, one from Macon County, one from St. Louis, Missouri, and one each from Nevada, Michigan and New Mexico. Under these circumstances we find no abuse of discretion in the trial court's denial of the *forum non conveniens* motions. *Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 568 N.E.2d 883.

■■ With regard to the Rule 220 issue, the plaintiff contends that Gruber was not an expert witness because he was not *retained* to render an opinion and cites *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, in support of his position. *Tzystuck* involved a treating doctor as did *Boatmen's National Bank v. Martin* (1992), 223 Ill. App. 3d 740, 585 N.E.2d 1328, which allowed an undisclosed opinion precisely because the witness was a treating doctor. We recently examined *Tzystuck* and several of the cases which had expanded the treating-doctor exception to Rule 220 and concluded that the expansion of the exception was unwarranted. (See *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 584 N.E.2d 963.) As we pointed out in *Wakeford*, a requirement of *disclosure* of all witnesses who are going to render an opinion places little burden on the proponent of the witnesses and prevents the surprise use of expert testimony on crucial issues. In this case, one of the defendants had admitted negligence. Therefore, the only issues remaining for determination as to that defendant were the extent of plaintiff's injuries and disabilities and his comparative negligence. The latter was removed by a directed verdict, a ruling we will discuss shortly, and the use of an undisclosed expert on the damage question becomes more significant in view of the liability admission.

Plaintiff contended that Gruber was called to counter the defendants' cross-examination of plaintiff on his ability to work. Plaintiff also stated, however, that Gruber was called to refute the cross-examination testimony of Dr. Salyapongse, one of plaintiff's treating doctors, on the same issue. We note that Dr. Salyapongse's testimony was presented by evidence deposition, and the deposition was taken over six months before the trial. This case, therefore, does not present a situation of some emergency necessitating the

disclosure of a new expert. Plaintiff knew six months before trial that defendants were contesting the issue of his inability to return to work and yet plaintiff did not disclose Gruber until several days into the trial.

Counsel contemplating whether to provide their opponents with the names of experts would be well advised to heed Robert Frost's admonition to,

> "The witch that came (the withered hag)
> to wash the steps with pail and rag,
> was once the beauty, Abishag."

Frost titled the poem and closed it with the same warning, "Provide, provide!" D. Sohn and R. Tyre, Frost: The Poet and His Poetry 112 (1969).

More important than Frost's warning are the supreme court rules. The supreme court has called for the disclosure of experts by implementation of Rule 220, and it has also firmly stated:

> "At the risk of stating the obvious, it should be pointed out that the rules adopted by this court concerning criminal defendants and guilty pleas are in fact rules of procedure and not suggestions." *People v. Wilk* (1988), 124 Ill. 2d 93, 103, 529 N.E.2d 218.

Turning to the issue of the directed verdict for the plaintiff on the question of his comparative negligence, we conclude that the trial court erred in that ruling also. The standard for directed verdicts was set forth years ago in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14.

What was the evidence on this issue? The record reveals that plaintiff had worked on and off as an oiler for three years. When he arrived for work the morning of his injury, the crane unit had already been located. While plaintiff did not position the crane near the Illinois Power lines, they were obviously present in relatively close proximity to the crane on which he was working. When the crane contacted the lines, the contact point was behind and above the plaintiff, and he testified he did not know contact had been made. Plaintiff did know, however, that the tires on the crane were on fire and that a fellow workman had jumped from the crane. The

safety rule book referred to earlier warned occupants of cranes to stay inside the cab or to jump clear. Plaintiff did neither.

■■ Plaintiff said he did not know contact had been made, but negligence is based not only on what actors know but also on what they should know. It is uncontroverted that plaintiff could have seen the contact between the crane and the power lines if he had turned and looked. Given a situation of a crane on a construction site located near overhead power lines whose tires suddenly burst into flame and whose co-workers jumped clear, it would not be unreasonable to require a person to look for the source of the flames and the jumping. Under these same circumstances, if the plaintiff had, without looking, moved the crane unit forward and contacted and injured a workman on the ground, could the trial court have properly directed a verdict for plaintiff on the issue of his negligence? We think not, but the same standard applies, whether the conduct is negligence by the defendant or comparative negligence by the plaintiff:

> "Logic demands that one rule govern both the direction of verdicts and determination of the presence or absence of negligence or contributory negligence as a matter of law, for in both situations the issue is whether a court or the jury should decide the negligence issue." (*Pedrick*, 37 Ill. 2d at 503, 229 N.E.2d at 510.)

Under the circumstances, the trial court erred in directing a verdict on the issue of plaintiff's comparative negligence.

■■ Our resolution of these two issues requires reversal and remand for a new trial on damages only as to defendants TomCal and Illinois Power.

As mentioned earlier, the jury returned a verdict for Koehring Bantam Division. Plaintiff has not appealed that result. TomCal, however, appealed the adverse judgment on its counterclaim against Koehring Bantam Division. We have reviewed the record and do not find that result to be against the manifest weight of the evidence and, therefore, affirm the judgment on the verdict in favor of Koehring Bantam Division. See *Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 537 N.E.2d 1348.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and this cause is remanded for a new trial on damages only as to TomCal and Illinois Power. While we reverse and remand for a new trial on damages only, we realize that evidence of the defendants' negligence will have to be

presented to the jury so that it can make a meaningful judgment of plaintiff's comparative negligence.

Affirmed in part; reversed and remanded in part.

WELCH, J., concurs.

PRESIDING JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.

The reasons for my dissent from the majority opinion are its disposition of the alleged Rule 220 violation (134 Ill. 2d R. 220) by allowing the testimony of Mr. Gruber and its treatment of the trial court's directed verdict concerning comparative negligence.

The majority opinion explicitly states or implies numerous points concerning Mr. Gruber: that he is an expert witness who would fall under the disclosure requirements of Rule 220; that he was called by surprise to defendants after the cross-examination of plaintiff and equally after the reading of the evidence deposition of Dr. Salyapongse, which all the parties had for a period of time prior to trial; and that since his being called as an expert violated Rule 220, the trial court of necessity had to bar his testimony and failure to do so was reversible error based on Rule 220. All of these positions are erroneous.

The colloquy between counsel and court indicates that the major reason for calling Mr. Gruber was the extensive cross-examination of plaintiff concerning his ability to return to work as an oiler or a similar job, given his physical limitations:

"MR. CORN [defense counsel]: We have been advised by Mr. [Bruce] Cook [plaintiff's counsel] that he intends to call a fellow whose name I did not catch.

MR. COOK: Gruber. Dan Gruber. G-r-u-b-e-r.

MR. CORN: Who apparently is going to be called to identify the 1990 contract and to give some other type of testimony. Mr. Gruber's name has not been identified at any time during the proceedings; has not been identified as a person having any knowledge of facts. Bruce has indicated that he's going to ask some questions about what would oilers do for light duty. We have never been able to depose this person. I would object to him being called as a witness, and ask the Court to rule outside the presence of the jury.

I will, from my client's standpoint, concede the lack of foundation for the contract, and the contract can go in with-

out any proof. I will stipulate it is the contract that has the overtime. I strenuously object.

MR. MacDONALD [defense counsel]: I'd join in that, Judge.

MR. BELL [defense counsel]: Koehring will also.

MR. COOK: The problem is interrogatories are not particular and no one has asked me that point; that the necessity for Mr. Gruber has arisen as a result of the cross-examination of the defendants who have made much in the examination of Dr. Salyapongse, in the examination of Mr. Thompson, about what he can or cannot do. And what I intend to ask Mr. Gruber is can a person in his condition, can he perform the duties of an operating engineer in the oiler category, or actually I guess, as an oiler, and that's all. I'm going to ask him, anyway, same thing you asked him, anybody with a 25-pound weight capacity who has part of their foot off and can't climb, whether or not they can work as an oiler. I don't know what his answer will be, other than what he's told me previously.

MR. BEATTY [defense counsel]: If the Court please, that's not a matter of fact, that's a matter of opinion. He's asked this witness to state an opinion as to what Mr. Thompson could do or not do given Mr. Thompson's physical situation. I think that falls under the Rule 220. There is a continuing obligation on the Plaintiff under 220 to provide us with the names of additional witnesses, or what they have to say. The obligation is not among—not upon the defendants to ask the Plaintiff for that information. The rule, Illinois Supreme Court Rule 220, sets the continuing obligation upon the Plaintiff to provide us with that information, and if an opinion is going to be rendered, it is necessarily the type of opinion that would fall under 220, and there has never been any disclosure, or supplementation of the 220 responses.

MR. COOK: Your Honor, he's strictly not a 220 witness. 220 contemplates very clearly in the Supreme Court Rules that he's a witness hired for the purpose of testimony. There has been much testimony—he is a fact witness in this case. My client is a member of his union. His union has a hiring hall or referral system, and he is merely a fact witness. Fact witnesses may be asked opinion questions, and he is not a 220 witness. 220 witnesses are people who are hired to testify. I would agree that I have to supplement the interrogato-

ries, but this is as a response to their cross-examination, and to the case made by them, suggesting that this man could do this work. And if they will all stipulate that he can't work as an oiler, given his condition, then I don't have any problem.

MR. BEATTY: First of all, Your Honor, this witness is being called upon to testify as to something which is beyond the ken of the ordinary juror, and that is with regard to the duties of an oiler and whether or not Mr. Thompson could perform those duties given his present circumstances and condition.

So, first of all, it is expert testimony in the nature since it is beyond the ken of the ordinary juror, and it is an opinion, because it's not a factual issue. He's being asked to express an opinion given certain conditions, given certain medical conditions, given certain limitations, can this person do this job. This is not a fact. That's not a matter of fact. That is a matter of this witness' opinion, and since it's an opinion that is expressed on an item beyond the ken of the ordinary juror, it's an expert opinion. It falls under Rule 220. There is an automatic duty, and continuing duty on the part of Mr. Cook to disclose it if it wasn't disclosed, and it should be barred.

MR. COOK: That's just not the law.

MR. BEATTY: It is the law.

MR. COOK: You ought to read Rule 220 and the cases on it.

MR. BEATTY: Bruce, I have, thank you.

MR. COOK: 220 is a witness hired for the purpose of testimony.

MR. CORN: Retained.

MR. COOK: I'm sorry. Take it up with the Supreme Court.

MR. CORN: Doesn't say employed. It says retained.

MR. COOK: I'm sorry, we haven't retained him.

THE COURT: I'll overrule the objection."

The trial court, after hearing argument on the objection based on Rule 220, allowed Mr. Gruber's testimony. Mr. Gruber's direct testimony on the pointed issue was the following:

"Q. Where are you employed, sir?

A. I'm employed by Operating Engineer's Local 520 in Granite City, Illinois.

Q. What do you do there, sir?

A. I'm a business representative, business agent.

Q. How long have you done that?

A. I've been a business agent a little over a year.

Q. Before that were you a member of your own union, sir?

A. Yes, I am.

Q. And what have you done as an operating engineer?

A. I was an oiler and apprentice for 24 years, and then I'm a journeyman now.

Q. And, does your union have members who have various job categories, operators, oilers, things of that nature?

A. Yes, we do.

Q. Have you worked as an oiler?

A. Yes, that's the term we use for apprentice is oiler.

\* \* \*

Q. (by Mr. Cook) Tell the jury what type of work oilers are expected to do if they are members of Local 520.

A. Yes, they basically help in the assembly, the disassembly, the cleaning, maintenance, and the lubrication of heavy equipment as defined in the contract. Heavy equipment meaning bulldozers, cranes, concrete plants, derricks, and so forth.

Q. Could a person do that duty generally if he had a 25-pound weight lifting restriction?

A. No.

Q. If a person is unable to climb ladders, can he perform as an oiler?

A. No.

MR. COOK: I don't think I have anything further. Thank you, Mr. Gruber."

He was cross-examined on the point as follows:

"CROSS EXAMINATION
BY MR. STEPHEN CORN

Q. Mr. Gruber, are you familiar with Art Hayes?

A. Yes, sir.

Q. He was an oiler out of your local, wasn't he?

A. Yes, sir.

Q. He had one arm?

A. Yes, sir.

Q. There is another oiler there in your union that has one arm, isn't there?

A. Yes, sir.

Q. Do you remember the oiler back in the 70s which was a paraplegic?

A. No, sir.

Q. Don't remember him?

A. No, sir.

MR. CORN: Thank you. I have nothing further."

The majority holds that this scenario constituted a violation of Rule 220 and implies that the violation was prejudicial, that barring of Gruber was mandatory, and that failure to do so was reversible error.

Rule 220, as with other rules promulgated by our supreme court, needs to be applied according to the intent indicated by its language. While we have held that a witness such as Gruber probably comes under Rule 220 and should be disclosed (see *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 584 N.E.2d 963), the majority takes a major leap by saying that failure to disclose *per se* constitutes prejudicial and reversible error. Rule 220 reads as follows:

"Rule 220. Expert Witnesses

(a) Definitions.

(1) *Definition of expert witness.* An expert is a person who, because of education, training or experience, possesses knowledge of a specialized nature beyond that of the average person on a factual matter material to a claim or defense in pending litigation and who may be expected to render an opinion within his expertise at trial. He may be an employee of a party, a party, or an independent contractor.

(2) *Consulting expert.* A consulting expert is a person who possesses the same qualifications as an expert witness and who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial to render opinions within his area of expertise.

(b) Disclosure.

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify.

In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his

counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later. In any event, as to all expert witnesses not previously disclosed, the trial court, on its own motion, or on the motion of any party after the first pretrial conference, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed. The schedule established by the trial court will sequence the disclosure of expert witnesses in accordance with the complexities of the issues involved and the burdens of proof of the respective parties as to those issues. All dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence. Upon disclosure, the expert's opinion may be the subject of discovery as provided in paragraph (c) hereof. Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness.

(2) *Consulting expert.* Except as provided in paragraph (c)(5) hereof, a party need not disclose the identity of a consulting expert.

(c) Discovery.

(1) Upon interrogatory propounded for that purpose, the party retaining or employing an expert witness shall be required to state:

(i) the subject matter on which the expert is expected to testify;

(ii) his conclusions and opinions and the bases therefor; and

(iii) his qualifications.

(2) The party answering such interrogatories may respond by submitting the signed report of the expert containing the required information.

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel.

(4) The provisions of paragraphs (c) and (d) hereof also apply to a party or an employee of a party who will render an opinion within his expertise at the time of trial. However, the provisions of paragraphs (c) and (d) do not apply

to parties or employees of entities whose professional acts or omissions are the subject of the litigation. The opinions of these latter persons may be the subject of disclosure by deposition only.

(5) The identity, opinions and work product of consulting experts are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means. However, documents, objects and tangible things as defined in Rule 214 which are in the possession of a consulting expert and which do not contain his opinions may be obtained by a request for that purpose served upon the party retaining him.

(6) Unless manifest injustice would result, each party shall bear the expense of all fees charged by his expert witness or witnesses.

(d) Scope of Testimony. To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (134 Ill. 2d R. 220.)

As of a 1985 amendment, the sanctions under Rule 219 (134 Ill. 2d R. 219) encompass Rule 220. One notes that this amendment of Rule 219 by the supreme court postdates the promulgation of Rule 220. Rule 219(c), in pertinent part, reads as follows:

"If a party, or any person at the instance of or in collusion with a party, unreasonably refuses to comply with *any provision of part E of article II of the rules of this court* (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

(i) that further proceedings be stayed until the order or rule is complied with;

(ii) that the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates;

(iii) that he be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;

(iv) that a witness be barred from testifying concerning that issue;

(v) that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice; or

(vi) that any portion of his pleadings relating to that issue be stricken and, if thereby made appropriate, judgment be entered as to that issue." (Emphasis added.) (134 Ill. 2d R. 219(c).)

The Committee Comments concerning Rule 219 state:

"Subparagraph (c) was amended in 1985 to make it clear that the sanctions provided for therein applied to violations of new Rules 220 and 222, as well as any discovery rules that may be enacted in the future." (Ill. Ann. Stat., ch. 110A, par. 219(c), Committee Comments, at 150 (Smith-Hurd Supp. 1992).)

The Supplement to Historical and Practice Notes states:

"The 1985 amendment to this section corrected the limiting reference to rules 201 through 218 which formerly appeared in paragraph (c). Accordingly the rule now provides sanctions for violation of the rule on discovery of expert witnesses (rule 220) and the rule on simplified discovery in small cases (rule 222), and will automatically apply to any rules added to this part of the Supreme Court Rules in future." Ill. Ann. Stat., ch. 110A, par. 219(c), Supplement to Historical and Practice Notes, at 151 (Smith-Hurd Supp. 1992).

The intent of the supreme court by its rules and amendments is clear. Violation of Rule 220 is a matter to be dealt with by the sound discretion of the trial court, and the remedies available to that court include all of those actions enumerated under Rule 219(c), including the remedy of barring the expert witness enumerated in Rule 219(c) and Rule 220. The implication of the majority's holding is that faced with a Rule 220 violation a trial court has no discretion and must bar the offending witness. While the various appellate districts have differed as to the degree of discretion, the prevailing view is that the trial court does possess some degree of discretion. (*Marshall v. Osborn* (1991), 213 Ill. App. 3d 134, 571 N.E.2d 492; *Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 538

N.E.2d 1236; *Dietrich v. Jones* (1988), 172 Ill. App. 3d 201, 526 N.E.2d 450; *Fischer v. G. & S. Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022; see also *Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 572 N.E.2d 1169, *leave to appeal denied* (1991), 141 Ill. 2d 560, 580 N.E.2d 134 (violation was harmless error); *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974 (limited discretion).) The majority opinion ignores this line of cases and ignores the clear intent evidenced by the inclusion of Rule 220 under the Rule 219 sanctions. *Schnuck Markets, Inc. v. Soffer* (1991), 213 Ill. App. 3d 957, 572 N.E.2d 1169; *Uhrhan v. Union Pacific R.R. Co.* (1992), 230 Ill. App. 3d 725, 596 N.E.2d 221.

As applied to the instant case, the record fails to sustain a holding of abuse of discretion. The majority opinion, first of all, does not even approach the trial court's holding as a question of discretion. In reviewing the circumstances of Mr. Gruber's being called as a witness, the limited amount of testimony that he gave, the minor position of Dr. Salyapongse's deposition, the testimony of Mr. Gruber, and the apparent lack of any prejudicial result of the decision to call him, I conclude that this record fails to support any abuse of discretion on the part of the trial judge. While it is surely preferable that all potential expert witnesses, and even those who might marginally be considered experts, should be disclosed as per the time limits of Rule 220, in the real world of heated and highly contested trials in substantial cases such as this one, events do occur at the last minute, and a trial court should not be handcuffed in exercising its sound discretion. See *Vallejo v. Mercado* (1991), 220 Ill. App. 3d 1, 580 N.E.2d 655.

Discretion also enters into the trial court's assessment of comparative negligence in this cause. The supposed basis for comparative negligence in this cause is that plaintiff, in exiting the cab when he discovered that the tires were on fire, failed to obey the applicable work rule in his exit. Plaintiff's testimony as to his exit was that he did not exit in the normal manner but also did not totally jump clear of the cab. On the basis of this record the trial court refused to submit the issue of comparative negligence to the jury.

An analogous situation to the question before this court is found in *Uhrhan v. Union Pacific R.R. Co.* (1992), 230 Ill. App. 3d 725, 596 N.E.2d 221. While an FELA case, the circumstances for its consideration of the question of comparative negligence are close to this. In *Uhrhan,* a switchman tripped over debris while lantern-signalling other members of his work crews. Defendant railroad's

safety rule required workers to be aware of tripping hazards and report or correct them, but our court held it inapplicable and the giving of the contributory negligence instruction as error.

Applying the circumstances and reasoning of the *Uhrhan* case to the case at bar, it is my opinion that the action of the trial court in refusing to submit the issue of comparative negligence to the jury was within its sound discretion and should not be overturned. The record does not show a clear violation of defendant's safety rule under these circumstances.

In sum, the majority opinion contains two major flaws. By far the most egregious is its evisceration of any shred of discretion resting in the trial court in its application of Rule 220, contrary to the intent of the language our supreme court used in promulgating Rule 220 and in amending Rule 219. In their evaluation of the evidence presented in the trials before them, our trial courts face an immense challenge in presiding over heated adversarial contests with the goal that the parties have their day in court and a fair trial. We do not promote these ends by severely restricting or eliminating the amount of discretion a trial judge may properly exercise when faced with the complexities and surprises that a trial necessarily entails.

For the foregoing reasons, I respectfully dissent from the majority's opinion.