MICHAEL PALEN, Special Adm'r of the Estate of Melissa M. Palen, Deceased, Plaintiff-Appellee, v. STRADER'S LOGGING et al., Defendants-Appellants.

Fifth District    No. 5—91—0257

Opinion filed April 19, 1993.—Rehearing denied May 27, 1993.

GOLDENHERSH, J., concurring in part and dissenting in part.

Daniel M. Reavy and Michael J. Pitzer, both of Rabbitt, Pitzer & Snodgrass, P.C., of Belleville and of St. Louis, Missouri, for appellants.

Callis Law Firm, of Granite City, for appellee.

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Michael Palen, filed this wrongful death action on behalf of Melissa M. Palen, deceased, who was killed in an automobile accident when her car was struck on September 9, 1987, by a logging truck driven by defendant Brian K. Strader in the course of his employment by defendant Strader's Logging. The trial court directed a verdict for plaintiff on the issues of defendants' liability and the decedent's comparative negligence. On appeal, both defendants contend that the trial court erred in directing a verdict for plaintiff on the issue of decedent's comparative negligence. Defendant Brian K. Strader also contends that the trial court erred in denying his motion to dismiss plaintiff's complaint against him because plaintiff failed to exercise reasonable diligence to obtain service prior to the expiration of the statute of limitations. We affirm the trial court's ruling on the service issue, but we reverse the ruling which directed a verdict on the comparative negligence issue.

I

Because the relevant facts differ for the issues on appeal, we will recite the facts necessary for resolution of the issues as we address each one. We first address Brian K. Strader's contention that plaintiff failed to exercise reasonable diligence to obtain service on him prior to the expiration of the statute of limitations. Plaintiff's initial complaint, filed on January 13, 1988, did not name Brian K. Strader as a party-defendant. Plaintiff amended his complaint to add Brian as a defendant on April 20, 1989, and a summons was issued for service by the Macoupin County sheriff's department. Summons was not served on Brian K. Strader at that time, however. Plaintiff took Brian's discovery deposition on November 15, 1989. On February 13, 1990, both defendants filed a joint motion requesting a continuance. The cover letter attached to the motion indicated that it was made on behalf of the "defendants" rather than the singular defendant, Strader's Logging. Defense counsel filed a motion to withdraw as Brian K. Strader's attorney, stating that he had no authority to enter an appearance for Brian and that service had not been made on him. On May 4, 1990, the trial court granted the motion to withdraw entry of appearance on behalf of Brian K. Strader. On May 15, 1990, plaintiff served Brian K. Strader with the summons and complaint. On June 5, 1990, Brian K. Strader filed a special appearance and motion to dismiss plaintiff's complaint against him pursuant to Illinois Supreme Court Rule 103 (134 Ill. 2d R.

103). The trial court denied the motion, and Brian K. Strader now appeals that order.

■■ The issue on appeal is whether the trial court abused its discretion in denying Brian's motion to dismiss. We find that it did not. Rule 103(b) provides:

"(b) Dismissal for Lack of Diligence. If the plaintiff fails to exercise reasonable diligence to obtain service prior to the expiration of the applicable statute of limitations, the action as a whole or as to any unserved defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice. In either case the dismissal may be made on the application of any defendant or on the court's own motion." (134 Ill. 2d R. 103(b).)

Plaintiff argues that the trial court correctly denied Brian's motion to dismiss because Brian participated in discovery when he was deposed by plaintiff's counsel and Brian's name was included as a defendant on several pleadings filed by defense counsel. Moreover, plaintiff argues that when the trial court granted defense counsel's motion to withdraw as attorney for Brian, plaintiff served Brian within two weeks. In support of his argument, Brian cites *Womick v. Jackson County Nursing Home* (1990), 137 Ill. 2d 371, 561 N.E.2d 25. In that case the plaintiff filed an action against the defendant two days before the statute of limitations expired. The plaintiff did not serve summons on the defendant until approximately nine months later. The trial court found that the plaintiff did not exercise reasonable diligence in serving the defendant and dismissed the action with prejudice pursuant to Supreme Court Rule 103(b). The plaintiff argued that the defendant had actual notice of the civil suit, which is the purpose of Rule 103(b). The *Womick* court held that actual notice or knowledge of the pendency of a suit or lack of prejudice to defendant are significant because they may affect the judge's determination as to whether plaintiff was diligent, but they are only two factors the court should consider in making that determination. (137 Ill. 2d at 377, 561 N.E.2d at 27.) The court further stated:

"Other factors include: (1) the length of time used to obtain service of process; (2) the activities of the plaintiff; (3) plaintiff's knowledge of the defendant's location; (4) the ease with which the defendant's whereabouts could have been ascertained; (5) special circumstances which would affect plaintiff's

efforts; and (6) actual service on the defendant [citation], and all of these factors are to be considered with a view toward fulfilling the constitutional mandate of rendering justice fairly and promptly [citation]." (137 Ill. 2d at 377, 561 N.E.2d at 27.)

In the case before us, we have no doubt that Brian had knowledge of the action through actual notice. Additionally, Brian does not show that he has been prejudiced by plaintiff's late service of summons. Therefore, the first two factors discussed by the *Womick* court clearly favor plaintiff's position. Applying the other six factors set forth in Womick to the case at bar, we find no abuse of discretion by the trial court in denying defendant's motion to dismiss. Brian's participation in the discovery process led plaintiff to believe that Brian was properly served as a party-defendant. Moreover, when the trial court granted defense counsel's motion to withdraw entry of appearance on behalf of Brian, plaintiff diligently served Brian with an alias summons.. This court will not disturb the trial court's order denying Brian K. Strader's motion to dismiss.

## II

The next issue we must address is whether the trial court erred in directing a verdict in favor of plaintiff on the issue of the decedent's comparative negligence. The facts relevant to this issue are as follows. On September 9, 1987, Brian K. Strader was driving a logging truck owned by Strader's Logging in an easterly direction in the right lane of Route 140 in Alton. The decedent was driving a passenger car in a northerly direction on Powdermill Road. The two vehicles collided when Strader's truck skidded into the intersection of the two roadways and struck the decedent's car as she turned west onto Route 140. The decedent died as a result of injuries sustained in the collision. There were several witnesses to the incident who testified at trial.

Brian Prince was driving north on Powdermill Road approaching the "T" intersection of Powdermill Road and Route 140. There are two left-turn lanes at that intersection, and Prince stopped in the farthest left lane to wait for the light to turn green. Prince testified that after coming to a stop, he looked to his right and saw decedent as she approached the intersection in the other left-turn lane. The two made brief eye contact as the decedent looked to her left, and Prince noted that decedent's car rolled toward the intersection. Prince then looked at the traffic signal and saw that the light was green. Prince also proceeded forward but stopped short of

the intersection for a reason unknown to him. Prince looked to his left and saw the logging truck approaching from approximately 80 yards away. Prince also saw decedent's vehicle as it crossed the eastbound lanes of Route 140. Prince then saw the truck hit decedent's car.

Corin Wilde testified that at the time of the accident, he was seated in the right front passenger seat in the car driven by Prince. He stated that he saw the light turn red for the eastbound lanes of Route 140 and then saw defendant's truck traveling at a rate of approximately 60 miles per hour after the light was red, at a distance of approximately 100 feet from the intersection. Wilde also saw decedent's car accelerate into the intersection after her signal turned green and get broadsided by the logging truck.

Michael Wolff testified that he was heading westbound on Route 140 at the time of the collision. When Wolff first noticed defendant's truck coming toward him, the truck was at least 500 feet away and Wolff estimated that the truck was traveling at approximately 55 miles per hour. When Wolff was approximately 200 feet from the truck, he saw the driver of the truck apply the brakes and start sliding into the intersection. Wolff testified that the light was yellow when he saw the truck start to brake. Wolff stated that the decedent was stopped until the light turned green for the cars on Powdermill Road, but he added that she did not hesitate or look to her left once the light turned green.

After the defense rested, plaintiff moved for a directed verdict. The trial court found Michael Wolff's testimony was not credible and granted plaintiff's motion. The trial court directed the verdict in favor of plaintiff on the issues of liability and comparative negligence. The only issue that went before the jury was that of damages. The jury awarded plaintiff $215,356.60.

In this appeal, defendants argue that it was reversible error for the trial court to direct a verdict on the issue of comparative negligence. Defendants assert that the trial judge improperly discredited Wolff's testimony and the evidence presented a factual issue for the jury's determination. The standard of review for a directed verdict is whether all evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Boatmen's Bank v. Dowell* (1991), 208 Ill. App. 3d 994, 1001, 567 N.E.2d 739, 743.) We must therefore examine the record to determine if there is any

evidence to support a finding that the decedent was comparatively negligent in the accident which caused her death.

Michael Wolff testified:

"A. I would say the second that her light—I mean, I can, you know, just judge—the second her light turned green, I mean, she just launched. It was quick. I mean, you know, she didn't hesitate, she didn't look, she didn't do nothing, she just straight ahead.

Q. And were you able to see her face and head?

A. See her clear as day. I could see—she was just right here in my view and just sitting there. I mean, you could see her face.

Q. And where was she looking when she came out?

A. To me she was looking straight ahead at the light poles across the intersection, looking at them watching the light.

Q. And when was that?

A. While he had his brakes on, she was sitting there. When he was sliding through, she's watching straight ahead. When it turned green, she come right out in front of him.

Q. Now, was there any—was there any sound in that intersection?

A. Oh, heck, you can hear the tires squealing, I mean, brakes sliding. Hell, I could hear it clear as day. That's what caught my attention to even, you know, really look at him good. I was watching him and watching the cars hoping, you know, that they wouldn't pull out in front of him."

This testimony, when coupled with that of the other witnesses, presented sufficient evidence to present a question of fact for the jury on the issue of plaintiff's comparative negligence. The trial court's order directing the verdict on the issue of defendant's negligence has not been challenged on appeal, an understandable position in view of the facts of this case. However, the fact that defendant was clearly negligent does not *necessarily* mean that plaintiff's conduct played no part in this incident.

The supreme court reminds us:

"Logic demands that one rule govern both the direction of verdicts and determination of the presence or absence of negligence or contributory negligence as a matter of law, for in both situations the issue is whether a court or the jury should decide the negligence issue." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 503, 229 N.E.2d 504, 510.

See also *Thompson v. Illinois Power Co.* (1992), 237 Ill. App. 3d 273, 603 N.E.2d 1303.

The plaintiff relies upon *Salo v. Singhurse* (1989), 181 Ill. App. 3d 641, 537 N.E.2d 339, to support the trial court's ruling, but the case is distinguishable. In *Salo* the plaintiff was on the preferential highway, the defendant either ran a stop sign or failed to yield the right-of-way, and the jury assessed the plaintiff with 60% of the fault. In reversing that finding, the court stated:

> "If we were to follow the jury's apportionment in this case, every time a driver on a preferential highway saw an approaching car on an intersecting road or drive, he essentially would be required to stop to make sure the other car obeyed the stop sign and stayed there or else be found negligent." *Salo*, 181 Ill. App. 3d at 644, 537 N.E.2d at 341.

■ In this case, the plaintiff was not on the preferential highway. She stopped, she waited for the light to change to green, and according to Michael Wolff, "she just launched *** she didn't hesitate, she didn't look, she didn't do nothing, she just straight ahead." At the same time, again according to Wolff, a truck was approaching from her left with its tires squealing and obviously unable to stop in response to the red traffic light. A jury that believed Michael Wolff could reduce a verdict in plaintiff's favor. Therefore, the trial court erred in directing a verdict on the issue of comparative negligence.

On the issue of Wolff's credibility, the trial court stated that it found that Michael Wolff was not a credible witness. Plaintiff contends that the trial court's finding had no bearing on the outcome of this case. We cannot agree with that contention. The record reflects the following occurred during the argument on the directed verdict motion:

> "[Plaintiff's attorney]: And I think that even if there is any slight issue created by Mr. Wolff, his testimony is so unbelievable that there could be no issue as to anything he said.
>
> THE COURT: I find Mr. Wolff's testimony not credible. And I am directing a verdict.
>
> [Defendant's attorney]: Well, let me show for the record, the credibility is an issue for the jury. The man said under oath that he was just trying to tell the truth, and the Court has simply decided that he was telling the opposite of the truth in total."

In view of the context of the court's remark on this point we cannot agree that the finding had no bearing on the outcome.

Clearly, the credibility of a witness is for the jury to determine. (*Bailey v. Clark* (1990), 203 Ill. App. 3d 1017, 561 N.E.2d 367.) The court erred when it made the determination of Wolff's credibility and when it directed the verdict on the issue of comparative negligence.

We reverse and remand for a new trial on the issue of damages only, but the new trial should also present the issue of comparative negligence to the jury if the same evidence is presented on a retrial. While we remand for a new trial on damages only, we realize that evidence of defendant's negligence will have to be presented to the jury so that it can make a meaningful judgment of plaintiff's comparative negligence. See *Thompson v. Illinois Power Co.* (1992), 237 Ill. App. 3d 273, 603 N.E.2d 1303.

Reversed and remanded.

W.A. LEWIS,* J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I respectfully dissent from the majority's disposition of the comparative negligence issue and resultant directed verdict.

We must examine the record to determine if there is any evidence to support a finding that the decedent was comparatively negligent in the accident which caused her death. In doing so, I find no evidence that the decedent illegally entered the intersection. All witnesses testified that she proceeded into the intersection only after the signal turned green. Defendant argues that the decedent was negligent if she did not look both ways before crossing the highway, and Michael Wolff testified that she did not look both ways before proceeding forward, so the jury could infer that the decedent was comparatively negligent based on Wolff's testimony. The trial judge precluded such finding when he stated that he found Wolff to be an incredible witness and directed a verdict on the issue.

Looking at the evidence in an aspect most favorable to defendants, however, I conclude that a verdict finding the decedent comparatively negligent could not stand. The collision was caused solely

---

*Justice Henry Lewis participated in oral argument. Justice W.A. Lewis was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

by defendant's negligence in failing to stop his vehicle as the signal turned red. While the preferred motorist was not excused from exercising reasonable care, motorists who have a green light may assume that the intersecting traffic will stop. (*Salo v. Singhurse* (1989), 181 Ill. App. 3d 641, 537 N.E.2d 339; *Brostoff v. Maida* (1977), 45 Ill. App. 3d 871, 875, 360 N.E.2d 568, 571.) Therefore, the trial court properly directed a verdict in favor of plaintiff on the issue of comparative negligence. (See *Salo v. Singhurse*, 181 Ill. App. 3d 641, 537 N.E.2d 339.) The trial court's ruling concerning Wolff's credibility was surplusage.