BOATMEN'S NATIONAL BANK OF BELLEVILLE, Guardian of the Estate of Leona Groboski, a Disabled Person, Plaintiff-Appellee, v. THOMAS MARTIN, Defendant-Appellant.

Fifth District   No. 5—90—0308

Opinion filed January 29, 1992.

Richard M. Roessler and Thomas R. Peters, both of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

Stephen M. Tillery, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of Belleville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff went to the emergency room on a Saturday morning complaining of a two-day-old headache, dizziness, numbness in her neck and head, fatigue, vomiting, and memory loss. Her blood pressure was elevated and her pulse rate was low. Defendant diagnosed her as having the flu and sent her home with instructions to call her own physician on Monday.

On Monday, plaintiff's physician examined her, ordered a CT scan that showed bleeding in her brain, and referred her to a neurosurgeon who ordered an angiogram and scheduled surgery for the next day. The angiogram showed severe vasospasm, a narrowing of arteries caused by the presence of blood in the brain over a period of time. For that reason, surgery could no longer safely be performed. Plaintiff suffered a severe stroke resulting in irreversible brain damage. She sued defendant in Madison County for negligence, and a jury awarded her $5.1 million in damages.

Defendant appealed, claiming it was error to: (1) allow plaintiff's witness, Dr. David Schreiber, to testify; (2) exclude, *in limine*, reference by defendant's expert witness to medical statistics; and (3) allow plaintiff's counsel to use poster-sized exhibits of jury instructions during closing argument. We affirm.

We first address defendant's contention that the circuit court erred in allowing Dr. Schreiber, a neurologist, to testify.

Defendant argues that Dr. Schreiber was an expert witness subject to disclosure pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220). The circuit court ruled that Dr. Schreiber was a treating physician, and as such, was not required to be disclosed as an expert witness pursuant to Rule 220. (See *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525; *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894.) We agree.

Dr. Schreiber saw plaintiff four times: August 26, 1988, December 5, 1988, April 14, 1989, and September 19, 1989. During those visits, he examined plaintiff, took her history, ordered blood tests, prescribed medication, prescribed a diet, ordered an EKG, monitored her physical, occupational, and speech therapy, and helped her with medicare compliance. Physicians, such as Dr. Schreiber, who treat continuing medical problems resulting from initial alleged negligence are treating physicians. See *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171, 533 N.E.2d 894; *Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 561 N.E.2d 229.

Defendant argues, however, that Dr. Schreiber was an expert witness and not a treating physician, because he expressed opinion on the standard of care. We disagree.

It is the initial relationship, not the content of testimony, that is examined to determine whether Dr. Schreiber is a treating physician or witness subject to disclosure under Rule 220. (*Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 1093, 530 N.E.2d 1007, 1010.) In the case at bar, Dr. Schreiber first came into contact with plaintiff as her treating physician. The fact that he, in the course of that treatment, formed opinions as to the cause of her disability and the type of treatment she initially received does not transform him into a Rule 220 expert. See generally *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525.

Defendant argues further that Dr. Schreiber should have been disclosed as a Rule 220 expert because plaintiff's attorney supplied him with the medical records, reports and depositions of other physicians and asked him to render an opinion on the standard of care at trial.

Treating physicians are not subject to Rule 220 disclosure and may render opinions at trial because "those opinions are developed in the course of treating the patient and are completely apart from any litigation." (*Tzystuck*, 124 Ill. 2d at 234, 529 N.E.2d at 528.) We are aware of no case that holds that supplying medical records,

reports, and other physicians' depositions to a treating physician and asking that treating physician to render an opinion at trial transforms the treating physician into a Rule 220 expert. Since barring the expert from testifying at trial is the penalty for failure to timely disclose an expert under Rule 220 (*Klingler Farms, Inc. v. Effingham Equity, Inc.* (1988), 171 Ill. App. 3d 567, 525 N.E.2d 1172, *appeal denied* (1988), 122 Ill. 2d 576, 530 N.E.2d 247), we believe it would be most inequitable to establish such a rule and apply it retroactively to the plaintiff in this case. Therefore, we will not reverse the circuit court on this issue.

Further, the record, in the case at bar, makes clear that Dr. Schreiber's opinion on the standard of care was formed from treatment, independent of the material supplied by plaintiff's counsel:

"Q. [Defense counsel:] But, early last week for the very first time he said: In addition to that, Dr. Schreiber, would you be willing to look at some records I'll bring you and express an opinion as to whether or not [defendant] deviated from the accepted medical standards, is that correct?

A. [Dr. Schneider:] Yes.

\* \* \*

Q. And if I had deposed you the week before that in your office and if I had asked you were you going to give an opinion to Mr. Tillery in this case on the standard of care of [defendant], you would have said no, unless asked?

A. Right. I had an opinion. I was not asked to give that opinion. If you would have asked me my opinion on that date, I could have given you my opinion on that date.

Q. Without the records?

A. Without the records. With the information I had. The records just make me more sure, that's all."

Alternatively, defendant claims that even if Dr. Schreiber was not subject to Rule 220 disclosure, the circuit court erred in permitting Dr. Schreiber to testify because plaintiff's counsel had failed to disclose him in answers to non-Rule 220 interrogatories.

■ When considering the appropriate sanction for nondisclosure of witnesses other than Rule 220 experts, broad discretion is granted the trial judge. (*Frozen Food Express v. Modern Truck Lines, Inc.* (1967), 79 Ill. App. 2d 84, 223 N.E.2d 275.) In making this determination, the court must weigh certain factors: (1) surprise to opposing counsel; (2) intentional or inadvertent concealment; (3) nature of the witness' testimony, whether it is cumulative or new evidence supporting plaintiff's theory; (4) timeliness of ob-

jection; (5) opportunity and access of opposing party to interview or depose the witness prior to trial; and (6) prejudice resulting to the opposing party. *Western Electric Co. v. Bauer Brothers Construction Co.* (1971), 131 Ill. App. 2d 1028, 268 N.E.2d 445.

The record leaves little doubt that defense counsel was "surprised" when plaintiff called Dr. Schreiber to the stand at the "11th hour," an act that can hardly be deemed inadvertent, given defense counsel's oral motion to update discovery before trial.

■ Though we do not approve of what happened here, our approval is not the test; neither is how we might have ruled had we been presented with these same circumstances. The sole issue for us is whether the circuit court abused its discretion, and we cannot say that it did, because the circuit court permitted defense counsel to interview Dr. Schreiber without time limitation before he took the stand, and Dr. Schreiber's testimony was merely cumulative of other evidence. Therefore, we find no prejudice and believe the outcome of the trial was unaffected. (See *Western Electric Co. v. Bauer Brothers Construction Co.* (1971), 131 Ill. App. 2d 1028, 268 N.E.2d 445.) Accordingly, we find no abuse of discretion and affirm the circuit court on this issue.

■ We address next whether the circuit court erred in granting plaintiff's motion *in limine*. Plaintiff sought to exclude:

"statistical data through studies, articles, by expert opinion, or through any other testimony or means relating to the mortality or morbidity of patients with subarachnoid hemorrhage, unless such data, studies, or testimony is specifically clinically correlated to a patient in the condition in which Leona Groboski presented to defendant, Martin, on April 5, 1988, including, but not limited to, the grade of the hemorrhage, the location of the hemorrhage and the treatment administered."

The circuit court granted the motion.

Defendant argues that it was error to grant plaintiff's motion because it excluded reference to medical literature supporting his expert's opinions. We disagree.

It is well settled that Federal Rules of Evidence 703 and 705 (now adopted in Illinois) allow an expert to express an opinion based on facts or data not admissible in evidence as long as the facts or data are of the type reasonably relied upon by experts in the particular field (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322) and are not excluded by another rule of law or competing policy interest, *e.g.*, relevancy. (See *City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 554 N.E.2d 1381.) In the case at

bar, plaintiff sought, in the motion *in limine*, to ensure that the medical literature relied upon by defendant's expert in arriving at his opinion "specifically clinically correlated to a patient in the condition in which Leona Groboski presented to defendant, Martin, on April 5, 1988, including, but not limited to, the grade of the hemorrhage, the location of the hemorrhage and the treatment administered." The circuit court had discretion to require the expert to show that the medical literature he relied upon related to the plaintiff's injury, *i.e.*, that the facts or data used by the expert are of the type reasonably relied upon by experts in the particular field. (See, *e.g., City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 554 N.E.2d 1381.) In its ruling, the court stated:

> "I'm not forbidding [defendant] from offering these [*sic*] kind of statistical information if they can tie it up medically with the condition that the plaintiff had at that particular time, and then I think then, [*sic*] if [defendant] can tie that up, then I think it's evidence that the jury ought to hear."

Defendant did not show that the literature relied upon statistically correlated to a person with plaintiff's condition; we, therefore, find no error.

■ Lastly, we address whether plaintiff's use of poster-sized exhibits of selected jury instructions prejudiced defendant.

Nothing prohibits the use of poster-sized exhibits of jury instructions. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1107.) On the contrary, courts have held that "in closing argument, counsel for the parties are permitted to state their belief as to the anticipated instructions and develop their arguments in accordance with these instructions." *Sidorewicz v. Kostelny* (1981), 102 Ill. App. 3d 851, 854, 430 N.E.2d 377, 379.

Surveys of jurors have shown that jurors often have difficulty relating the case to the instructions—a difficulty best overcome by arguing the instructions during closing argument, and "enlarging a copy of the instructions on an overhead projector or posterboard." (Green, *A Jury Researcher Joins the Jury*, 91 Case & Comment 28, 35 (1986).) Since jurors are to decide the case, and since there is empirical evidence that enlarging the instructions helps the jury fulfill its mission, it seems to us that refusing to allow the instructions to be enlarged so that they can be seen and read by the jury during closing argument and thereby be incorporated into the closing argument is a bad choice. There is no error in this procedure; to the contrary, it should be encouraged.

Defendant offers no evidence to suggest that the instructions were misstated or that plaintiff's choice of which instructions to display misled the jury. Therefore, we find no error in allowing this technique of advocacy.

The judgment of the circuit court is affirmed.

Affirmed.

HARRISON and LEWIS, JJ., concur.