(No. 73328.—

BOATMEN'S NATIONAL BANK OF BELLEVILLE, Guardian of the Estate of Leona Groboski, a Disabled Person, Appellee, v. THOMAS MARTIN, M.D., Appellant.

*Opinion filed May 20, 1993.—Rehearing denied June 28, 1993.*

HARRISON, J., took no part.
MILLER, C.J., specially concurring.

Gary M. Peplow and Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Richard M. Roessler and Thomas R. Peters, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellant.

Stephen M. Tillery and Michael B. Marker, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellee.

Mary W. McDade, of Quinn, Johnston, Henderson & Pretorius, of Peoria, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the opinion of the court:

Leona Groboski filed a medical malpractice action in the circuit court of Madison County against defendant, Thomas Martin, M.D., seeking damages for defendant's alleged failure to diagnose a hemorrhage in Groboski's brain. Boatmen's National Bank of Belleville was subsequently appointed as Groboski's guardian and thus became the nominal plaintiff in Groboski's action. The jury returned a verdict in the amount of $5.1 million in favor of plaintiff. The appellate court affirmed. (223 Ill. App. 3d 740.) We granted defendant's petition for leave to appeal (134 Ill. 2d R. 315), and allowed the filing of *amicus curiae* briefs by the Illinois Association of Defense Trial Counsel and the Illinois Trial Lawyers Association. For reasons which follow, we affirm.

## BACKGROUND

On Saturday, April 5, 1986, Leona Groboski was treated by Dr. Thomas Martin in the emergency room of St. Elizabeth's Medical Center in Granite City, Illinois. Groboski complained of a sudden onset, the previous Thursday, of a severe headache, accompanied by vomiting, fatigue, memory loss and numbness to the neck and head. Martin diagnosed Groboski's condition as a viral syndrome and released her. Groboski was advised to rest in bed, take aspirin, see her regular physician and return to the hospital if necessary. The following Monday, April 7, Groboski returned to the hospital, complaining of the same symptoms. Groboski was examined by Dr. Larry Harmon, who ordered a CT scan. The scan revealed a hemorrhage in Groboski's brain. Dr. Paul Young, a neurosurgeon, ordered an angiogram and scheduled surgery. Results of the angiogram, however, indicated the presence of vasospasms, a narrowing of the arteries, which precluded surgery. Groboski ultimately suffered a severe stroke, resulting in irreversible brain damage and severe paralysis.

Groboski sued Martin and St. Elizabeth's Medical Center. Martin propounded interrogatories to Groboski pursuant to Supreme Court Rule 201 (134 Ill. 2d R. 201). The interrogatories requested the names and addresses of persons having knowledge of Groboski's injuries and damages, and of attending or consulting physicians who might have treated Groboski for any injuries and injuries resulting from the alleged occurrence.

On August 26, 1988, after the filing of the present action, Dr. David J. Schreiber, a neurologist, examined and evaluated Groboski at the nursing home where she was confined. Groboski was unable to verbally communicate. Groboski's son had engaged Schreiber on the basis of a referral by a "friend." Groboski's family members

provided Schreiber with Groboski's medical history. Schreiber continued Groboski on certain medications and advised the family concerning her care as a result of related side effects.

Groboski's attorneys filed answers to the interrogatories three weeks later, which made no mention of Schreiber as a treating physician. Schreiber examined Groboski again in December 1988, April 1989, and September 1989, ordering blood tests and an EKG, prescribing medication, assisting with Medicare compliance, and advising as to therapy and long-term care. Schreiber received Groboski's medical records from St. Elizabeth's Medical Center and another medical facility sometime in May 1989.

Groboski's attorneys disclosed four experts, under Supreme Court Rule 220, who might potentially testify at trial (134 Ill. 2d R. 220). Drs. Patrick J. Sullivan and Howard Schwartz, two of the four, were named as medical experts concerning standard of care, negligence and proximate cause issues. Schreiber was not listed.

In April 1989, defense counsel took the discovery deposition of John Schatzlein, Groboski's rehabilitation specialist. Schatzlein described Schreiber as the physician who was "the medical officer in the case, he's the one that gives the prescription for the therapy and *** the number of home health aid level." Schatzlein stated that he evaluated Groboski and relied on information received from Schreiber and other medical professionals in order to develop Groboski's rehabilitation plan. Schatzlein further stated that Schreiber was the only such professional with whom he actually spoke. Schatzlein also related part of Schreiber's explanation to him regarding the nature of Groboski's deficits and Schreiber's recommendations concerning her care and physical therapy. Defense counsel queried Schatzlein about Schreiber's recommendations. On April 19, 1989,

Schatzlein also prepared a medical and rehabilitation report which stated that he had discussions "with Dr. Schreiber, a neurologist presently seeing her and prescribing future treatments" and that Schreiber had made certain recommendations concerning home care. The record reflects that a copy of the report was provided to the defense.

In May 1989, Groboski's sons filed a petition for the appointment of a guardian of their disabled mother's estate in probate court. Schreiber's name and address were provided in a physician's report, submitted in support of the petition, which described Groboski's disabilities based on his examination. On May 22, following the probate court's appointment of Boatmen's National Bank as guardian of Groboski's estate, the bank was substituted for Groboski as the plaintiff in the instant case.

Jury selection commenced in September 1989. Prior to *voir dire*, the trial court requested each party to list its witnesses out of a concern that the jurors might be familiar with them. Plaintiff's attorney named defendant, Harmon, Young, Dr. Robert Dunn, a neurosurgeon, and Pat Englemann, a nurse. After jury selection and preliminary motions, defense counsel made an oral motion to update discovery with respect to Rule "220 witnesses or any new witnesses." (134 Ill. 2d Rules 220, 213(e).) Without checking his litigation file, plaintiff's counsel responded that he believed defense counsel had "everything."

On the second day of trial, defense counsel observed Schreiber in the courthouse and learned from plaintiff's counsel that Schreiber would be called to testify concerning issues of causation and standard of care. The defense moved to bar Schreiber from testifying, contending plaintiff had not disclosed him in answers to interrogatories as either a treating physician or as a Rule 220 expert witness, and none of his records had been produced.

Plaintiff maintained that Schreiber had been disclosed as Groboski's treating physician during Schatzlein's deposition and as a result of Schatzlein's report and the guardianship proceedings. The trial court found that Schreiber was a treating physician and ruled that he might testify following deposition by the defense. The trial court determined, also, that Schreiber's disclosure under Rule 220(b)(1) was not required because he was a treating physician. Copies of Schreiber's medical records for Groboski were subsequently tendered by plaintiff to the defense. Schreiber was then deposed.

During his deposition, Schreiber testified that several days before trial, plaintiff's counsel had provided Schreiber with the April 5 emergency room record and the depositions of Young and Schatzlein. At that time, plaintiff's counsel had requested Schreiber to testify at trial concerning his treatment and evaluation of Groboski and whether defendant deviated from the appropriate standard of care. Schreiber stated that he would have testified "earlier" as to Groboski's disability and her needs, but not as to whether Dr. Martin met the standard of care. Schreiber had not previously expressed his opinion concerning the standard of care, but he had formulated his opinions concerning Groboski's care and "what should have been done" when he first examined her based on her history and his knowledge and experience. Those opinions had remained unchanged and were merely confirmed by the records received from plaintiff's counsel. According to Schreiber, "[t]he records just [made him] more sure."

Before the jury, Schreiber testified concerning his treatment of Groboski and recommendations for her extended care. In addition to his own treatment records and records from St. Elizabeth's Hospital, Schreiber testified by referring to the CT X rays, the angiogram and the April 5 emergency room record. Schreiber testified

that if a CT scan had been performed on Groboski on April 5, the hemorrhage would have been diagnosed, and if surgery had been performed within a 72-hour "window" period after onset of the hemorrhage Groboski would likely be normal. Schreiber further testified that the standard of care for an internist required either the immediate performance of a CT scan or an immediate neurological consultation. Dr. Sullivan testified similarly concerning causation and standard of care; and Dr. Young testified similarly concerning causation. Schreiber also testified in rebuttal that if the angiogram on April 7 had revealed vasospasm, Young would not have performed surgery; Young testified on direct that if the vasospasm had not occurred, he could have proceeded with surgery. Schreiber also testified that Young had prepared for surgery on April 8 as though the 72-hour period had already expired.

The jury returned a verdict in favor of plaintiff and defendant appealed. The appellate court affirmed, determining that Schreiber was not subject to Rule 220 disclosure. The appellate court also found no abuse of discretion in permitting Schreiber to testify. The appellate court found, however, that defendant was " 'surprised' " when Schreiber was called to testify "at the '11th hour' " and that plaintiff's "act" in doing so could "hardly be deemed inadvertent" given defendant's oral motion to update discovery. 223 Ill. App. 3d at 744.

Two issues are presented by this appeal: (1) whether the trial court abused its discretion by denying the motion to bar Schreiber's testimony where he was not identified as an occurrence witness in answer to interrogatories; and (2) whether the trial court erred in determining that Schreiber, a treating physician, was not subject to disclosure as an expert witness pursuant to Supreme Court Rule 220(b)(1).

## DISCUSSION

Defendant contends that the trial court abused its discretion by not barring Schreiber's testimony. (134 Ill. 2d R. 219(c)(iv).) Defendant argues that plaintiff grossly violated discovery by failing to disclose Schreiber as a treating physician in response to interrogatories under Supreme Court Rule 201 (134 Ill. 2d R. 201).

The question of the appropriate sanction, if any, to be employed by the trial court for failure to list a witness in response to a proper interrogatory is within the discretion of the trial court. The refusal to employ any sanction is not an automatic abuse of discretion, although the trial court may abuse its discretion in failing to employ sanctions in certain cases. (*Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 368, citing *Buckler v. Sinclair Refining Co.* (1966), 68 Ill. App. 2d 283, 290.) Where discretion has been vested in the trial court, only a clear abuse of discretion or an application of impermissible legal criteria justifies reversal. See *Ashford*, 99 Ill. 2d at 369.

A reviewing court must look to the criteria on which the trial court should rely to determine if the trial court abused its discretion. (See *Ashford*, 99 Ill. 2d at 369.) The factors a trial court is to use in determining whether exclusion of a witness is an appropriate sanction are: (1) surprise to the adverse party; (2) the prejudicial effect of the witness' testimony; (3) the nature of the witness' testimony; (4) the diligence of the adverse party; (5) whether objection to the witness' testimony was timely; and (6) the good faith of the party calling the witness. (See *Ashford*, 99 Ill. 2d 353.) Each case, however, presents a unique factual situation which is to be considered in determining whether a sanction is to be imposed. See *Ashford*, 99 Ill. 2d at 372.

Defendant asserts that he was surprised when plaintiff called Schreiber to testify and directs our attention

to the appellate court's consistent finding to that effect. Plaintiff argues, however, that defendant has no reasonable basis for surprise because Schreiber's identity as Groboski's treating physician was fully disclosed in Schatzlein's deposition and rehabilitation report, and was a matter of public record because of the guardianship proceeding. Plaintiff correctly points out, also, that, under the civil practice rules, there exists no duty obligating parties to disclose the names of witnesses whom they intend to use at trial. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1003(c) ("[a] party shall not be required to furnish the names or addresses of his or her witnesses"); see also *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 236-37.) Plaintiff thus argues that the appellate court's finding is irrelevant, as it pertains to defendant's surprise that Schreiber would be used at trial and not to the fact that he was an occurrence witness.

Under the circumstances presented here, defendant cannot claim surprise as to Schreiber's existence as an occurrence witness. A party cannot claim surprise or prejudice when he knows of the existence of a witness even where answers to interrogatories are incomplete. (*Mantia v. Kaminski* (1980), 89 Ill. App. 3d 932, 936; accord *Smith v. Realcoa Construction Co.* (1973), 13 Ill. App. 3d 254.) Schreiber's identity as Groboski's treating physician was fully disclosed by defendant's deposition of Schatzlein and in Schatzlein's rehabilitation report five months before trial. Schatzlein stated in response to questioning by defense counsel that Schreiber was the main physician then responsible for Groboski's care as well as her therapy. He indicated, repeatedly, throughout his deposition, that Schreiber had advised him of Groboski's deficits and defense counsel asked questions about Schreiber. Schatzlein's rehabilitation report also stated that Schreiber was a neurologist "presently seeing her and prescribing future treatments." Schreiber

was also identified in the guardianship proceeding as having examined and evaluated Groboski. It cannot be said that Schreiber was unknown to defendant; Schreiber's existence as an occurrence witness was no secret. While it may be that Schreiber's existence was disclosed in a manner suggesting that he would not be used as a trial witness, as previously stated, our civil practice rules do not obligate parties to disclose those occurrence witnesses who will testify at trial. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1003(c).) We conclude that defendant cannot claim surprise as to Schreiber's existence as an occurrence witness.

As far as the prejudicial effect of Schreiber's testimony is concerned, we discern none. Schreiber essentially testified that: (1) the hemorrhage occurred Thursday night, at the onset of Groboski's symptoms; (2) the standard of care for an internist required the performance of an immediate CT scan or neurological consultation when Groboski was seen in the emergency room on April 5; (3) a CT scan on April 5 would have revealed the hemorrhage and, if surgery had then been performed, within 72 hours of the hemorrhage's occurrence, Groboski would likely not have had a stroke and would be normal; and (4) by the time Dr. Young saw Groboski, on April 7, she was beginning to have vasospasms.

Dr. Dunn, defendant's expert, and Dr. Young both testified that the hemorrhage began with the onset of Groboski's headache; and Dunn testified that the onset of Groboski's headache occurred Thursday night. Drs. Young, Sullivan, Dunn and defendant testified that the hemorrhage could have been detected by a CT; Dunn stated the hemorrhage could have been detected on April 5. Young testified that if he had been contacted to evaluate Groboski on April 5, he would have proceeded then as he had on April 7 (taking an angiogram and performing surgery), and if he had been able to proceed

with surgery without the occurrence of vasospasm, surgery would have been likely successful and Groboski would have likely recovered. Young further testified that vasospasms had manifested in Groboski on April 7. Like Schreiber, Sullivan testified that defendant had deviated from the accepted standard of medical care by failing to order a CT scan.

This review of the evidence reveals that Schreiber's testimony was cumulative of other testimony. Each opinion offered by Schreiber was echoed in the testimonies of the other medical witnesses. Further, we note that defendant cannot claim that he was disadvantaged by not being provided the opportunity to depose Schreiber in advance of trial as defendant did not seek to depose any of Groboski's other treating physicians (Harmon and Young) or plaintiff's expert, Dr. Sullivan, either. By being afforded the opportunity to interview Schreiber during trial, defendant actually realized more of an advantage than he was apparently prepared to gain with any of the other medical witnesses. In sum, we conclude that Schreiber's testimony did not have prejudicial effect.

Concerning the nature of Schreiber's testimony, defendant claims that its significance lies in the fact that it was in the nature of expert opinion testimony offered by a treating physician. We would agree that because of that fact Schreiber's testimony might have carried greater impact; as a treating physician Schreiber was cast as an objective observer whose opinions were independent.

The diligence of defendant in obtaining knowledge of Schreiber's existence was adequate. Defendant propounded proper interrogatories and followed with a pretrial Rule 213 request for the identity of any occurrence witnesses not previously disclosed. Once Schreiber's identity was known, defendant had every opportunity to depose Schreiber and request production of his records

before trial. (See 134 Ill. 2d Rules 204(c), 214.) We conclude that defendant was adequately diligent under the circumstances.

It is clear that defendant did object in a timely fashion to Schreiber's testifying. Defense counsel voiced his concerns as soon as he became aware that Schreiber would be called.

In terms of the last factor, the good faith of the adverse party, we would conclude that plaintiff fairly demonstrated that quality. On appeal plaintiff states that when the answers to defendant's interrogatories were filed, plaintiff was unaware that Schreiber had begun treating Groboski and mistakenly omitted his name from the list of treating physicians. The record in fact demonstrates that defendant's interrogatories were served on plaintiff on April 28, 1988, nearly four months before Schreiber first examined Groboski. That examination of Groboski took place a mere three weeks prior to the filing of the answers and it is undisputed that Groboski was unable to verbally communicate. Defendant's assertion that plaintiff's counsel referred Groboski to Schreiber is insupportable. Plaintiff's counsel unequivocally told the trial court: "I didn't refer the patient to [Schreiber]."

Nonetheless, plaintiff was under a duty to supplement the answers because they were not complete with respect to Schreiber's involvement. (See 134 Ill. 2d R. 213(e).) Yet, we cannot say that plaintiff sought to deliberately conceal Schreiber's existence and identity. Schatzlein, plaintiff's witness, fully revealed Schreiber's existence and identity to defense counsel some five months before trial. At that time, defense counsel questioned Schatzlein about Schreiber and Schreiber's views. In this regard, this case is far removed from the circumstances presented in *Ashford*, 99 Ill. 2d 353, where the

plaintiff learned of the defendant's key witness after the plaintiff had presented the bulk of her case in chief.

The appellate court in the instant case found that plaintiff's "act" in calling Schreiber to testify was "hardly *** inadvertent." (223 Ill. App. 3d at 744.) The court drew this conclusion on the basis of plaintiff's response to defendant's discovery update request under Rule 213. We do not consider plaintiff's response to have been disingenuous considering that Schreiber's existence was apparently known to defendant and defendant had not sought to depose any of Groboski's treating physicians. We also do not consider plaintiff's failure to list Schreiber in response to the trial court's request of witnesses' names for *voir dire* purposes to have been a purposeful omission. In addition to Schreiber, plaintiff neglected to list several other persons intended to be called as witnesses, including Schatzlein, Groboski's son, Sullivan, and Dr. Charles Linke. Under such circumstances, the omission of Schreiber's name was not apparently purposeful. We cannot conclude from this record that plaintiff was lacking in good faith. In our judgment, no lack of good faith by plaintiff is demonstrated by this record.

We have considered the relevant facts in relationship to the several factors to be considered in determining when exclusion of a witness' testimony is an appropriate sanction. In this case, the factors appear closely balanced. However, several of the more essential factors—surprise, prejudicial effect and good faith—redound in plaintiff's favor. Under such circumstances, the trial court's ruling in denying the motion to bar Schreiber's testimony was a reasonable exercise of sound discretion. (See *Bochantin v. Petroff* (1991), 145 Ill. 2d 1, 7.) We find no abuse of discretion and affirm the appellate court.

Defendant also contends that Schreiber was subject to Supreme Court Rule 220(b) disclosure because he was under the control of plaintiff, his opinions were not related to his care and treatment of Groboski, and they did not arise out of his participation in the case. According to defendant, the trial court erroneously interpreted case law as holding that treating physicians need never be disclosed under Supreme Court Rule 220(b) (134 Ill. 2d R. 220(b)). (*Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171; *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226.) In defendant's view, these decisions indicate that disclosure of treating physicians under Rule 220(b) turns on issues concerning (1) a party's control of the witness; (2) whether the substance of the witness' testimony is connected to treatment; and (3) the element of surprise. According to defendant, the mere fact that a physician treated a plaintiff is but one consideration when determining whether disclosure is required under Rule 220(b).

Plaintiff takes the position that Schreiber was not subject to Rule 220(b) disclosure because of this court's holding in *Tzystuck*. According to plaintiff, *Tzystuck* held that the plain language of Rule 220(b) indicates that the rule does not apply to treating physicians. Plaintiff allows, however, that the scope of the holding in *Tzystuck* may be narrower. That is, the treating-physician exception, recognized by *Tzystuck*, may only apply to treating physicians who offer expert opinion testimony based on information acquired through treatment.

Supreme Court Rule 220(b)(1) provides in pertinent part:

"Disclosure.

In order to insure fair and equitable preparation for trial by all parties *the identity of an expert who is retained to render an opinion at trial on behalf of a*

*party must be disclosed by that party* \*\*\*." (Emphasis added.) 134 Ill. 2d R. 220(b)(1).

This court has steadfastly maintained the position that treating physicians are not subject to Rule 220(b)(1) disclosure. (*Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543; *Fawcett v. Reinertsen* (1989), 131 Ill. 2d 380; *Wilson v. Chicago Transit Authority* (1988), 126 Ill. 2d 171; *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226.) Our appellate court has expanded this treating-physician exception to situations involving other types of witnesses who also testify utilizing special knowledge. *Taake v. WHGK, Inc.* (1992), 228 Ill. App. 3d 692; *First National Bank v. Village of Mount Prospect* (1990), 197 Ill. App. 3d 855; *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833; *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482.

The treating-physician exception to Rule 220(b)(1) was first developed in *Tzystuck*. *Tzystuck*, however, has come to mean many different things to many different people, often with unfortunately surprising results. See S. Buser, *Illinois Rule 220: Trial Lawyers' Bugaboo*, Trial Briefs, No. 7 (ISBA March 1992); Redden, *The Decline of Rule 220: The Rise of Trial by Ambush*, 80 Ill. B.J. 440 (1992); McDonnell, *Disclosure of Experts Under Rule 220: The Confusion Continues Wakeford v. Rodehouse Restaurants of Missouri, Inc.*, 3 IDC Q. 3 (1993).

In determining whether disclosure of a treating physician was required under Rule 220(b)(1), *Tzystuck* looked to the plain language of the rule and focused upon the phrase, "retained to render an opinion at trial." (134 Ill. 2d R. 220(b)(1).) *Tzystuck* held that treating physicians are not expert witnesses subject to Rule 220(b)(1) disclosure because they typically "are not 'retained to render an opinion at trial' but are consulted, whether or not litigation is pending or contemplated, to treat a patient's

physical or mental problem." (*Tzystuck*, 124 Ill. 2d at 234, quoting 107 Ill. 2d R. 220(b)(1).) The *Tzystuck* court then examined the contextual relationship in which those witnesses' opinions were developed:

> "While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any litigation. Such an opinion is not formed in anticipation of a trial, but is simply the product of a physician's observations while treating the patient, which coincidentally may have value as evidence at a trial. In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck*, 124 Ill. 2d at 234-35.

The *Tzystuck* court then noted that its "conclusion" was *consistent* with Federal Rule 26(b)(4)(A)(i) (Fed. R. Civ. P. 26(b)(4)(A)(i)), as well as *logical* in light of discovery obligations imposed upon parties by Rule 220(c), which rule presumes control over the expert witness. (134 Ill. 2d R. 220(c).) The *Tzystuck* court concluded by observing that any element of surprise associated with expert opinion testimony was eliminated because discovery of treating physicians' identities and their views was provided for under Rule 201(b)(1) (134 Ill. 2d R. 201(b)(1)). In the case of *Tzystuck*, considering the Rule 201(b)(1) discovery, the identity of the treating physician had been disclosed, his records had been produced and his deposition had been taken before he was called as a witness. Additionally, he had relied on no materials other than his own observations and experiences with the plaintiff.

This court has recently interpreted *Tzystuck* in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992),

154 Ill. 2d 543. In *Wakeford,* a police officer was permitted to testify that the defendant's hotel was not located in a high-crime area and he did not believe a security guard was necessary at the hotel. The officer had investigated the underlying criminal incident, but he also reviewed police crime reports on a daily basis and the police department's geographical crime index file. At issue was whether the officer was subject to Rule 220(b)(1) disclosure and subsection (c) discovery requirements.

This court found that the primary basis for the *Tzy-stuck* decision resided in the need to eliminate surprise expert testimony. Because of a treating physician's relationship to the case, no surprise could be reasonably generated by his expert opinion testimony. *Wakeford* held that the issue of "retained" under Rule 220(b)(1) could be determined by examining the witness' relationship to the case. The relationship could be examined to determine whether the expert's related opinion could be reasonably expected to be formed through the expert's involvement in the underlying facts. Notably, *Wakeford* rejected the notion that the lack of control over physicians formed any primary basis for the *Tzystuck* decision. Rather, *Wakeford* emphasized the witness' relationship and the context in which the expert's opinions arose.

Applying this rationale, *Wakeford* found that the police officer was a "retained expert" under Rule 220 because his expert opinion testimony about the area around the hotel and the need for security could not be reasonably expected to have been formed through his investigation of the underlying crime. *Wakeford,* 154 Ill. 2d at 549.

We apply the rationale employed in *Wakeford* and *Tzystuck* to the present case. The record shows that Schreiber treated Groboski for the conditions she experienced, resulting from a failure to diagnose her brain

hemorrhage, extensive and debilitating brain damage, paralysis, and long-term residual side effects. Schreiber also made recommendations regarding Groboski's resultant need for physical and occupational therapy. Further, Groboski's injuries were extensive and of a permanent nature. As such, we cannot say that Schreiber's involvement was slight or peripheral, despite that he dealt primarily with the effects of Groboski's stroke. Based upon the extent of Schreiber's involvement, we also cannot say that he could not have been expected to form an opinion as to the causes of her condition and the appropriateness of her previous treatment.

Further, Schreiber clearly stated that, while he may never have expressed his opinions prior to plaintiff's counsel's request, he had, nonetheless, previously formed those same opinions. He additionally stated that he had formed his opinions when he first examined Groboski based on his knowledge, experience and Groboski's history. He unequivocally stated that he had not needed the materials provided by plaintiff's counsel to formulate those opinions. The materials only confirmed his views, which remained unchanged. As noted in *Tzystuck*, a treating physician's opinion testimony may coincidentally be useful in litigation. Nonetheless, we cannot say that those opinions were formed in anticipation of trial if, as in the present case, the expert opinion develops through the treating physician's involvement in the underlying facts, even if the opinion was first solicited by attorneys on the eve of trial.

That is not to say that, in all instances, treating physicians are never subject to Rule 220(b)(1) disclosure. (See *Kniceley v. Migala* (1992), 237 Ill. App. 3d 72, 77-78 (drawing distinction between "examining" physicians and treating physicians).) The test is in the nature of the physician's relationship and whether a related opinion could be expected to be formed through that involve-

ment. Application of that test achieves the purposes of Rule 220, the elimination of surprise expert opinion testimony.

It may well be that the treating physician-patient relationship is unique for purposes of determining Rule 220(b)(1) disclosure. A subsequent treating physician may necessarily always rely upon the opinions, diagnoses, records, observations, and previous treatments of his patient. As a result, the physician forms opinions which often remain unstated for the purposes of his treatment of the patient. Nonetheless, he may consider those opinions and implicitly act on them in that treatment. As a consequence, the line between treatment-associated opinions and litigation-associated opinions is often ambiguous and may well be indiscernible. We believe that the present case, while not presenting the issue of this distinction, nevertheless informs us of the ease with which that line may be crossed. We strenuously disapprove of strategies which are purposefully designed to circumvent our discovery rules, resulting in unfair surprise to litigants. Under the facts of this case, however, we are not called to develop more specific legal criteria to avoid such abuse, and we decline to do so. See *Barth v. Reagan* (1990), 139 Ill. 2d 399, 421 (courts of review "will not decide moot or abstract questions, render advisory opinions, or consider issues that are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided").

We note, parenthetically, that the appellate court in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 39-40, recommended that all experts be subject to Rule 220(b)(1) disclosure and that the "retained" versus "nonretained" distinction be determinative of the discovery requirements of Rule 220. The recommendation bears consideration by this court in its rulemaking capacity. However, because that recom-

mendation necessarily implicates provisions which are not at issue here, we simply note the recommendation.

Defendant would factually distinguish this case from *Tzystuck*. According to defendant, the purpose of Rule 220(b)(1), the elimination of late or surprise disclosure of experts at trial, is not achieved under the facts presented here. Defendant argues that the treating-physician exception recognized in *Tzystuck* presumes the disclosure of the treating physician's identity by answer to Rule 201 interrogatories and the production of medical records. While those may be the particular facts in *Tzystuck*, application of the exception does not require those exact facts. *Tzystuck* holds that any aspect of surprise as to expert opinion testimony is remedied by the availability of Rule 201(b)(1) discovery and an order for a deposition under Rule 204(c). We decline to confine *Tzystuck* to its particular facts.

Defendant has no ground to complain that he was surprised by Schreiber's medical testimony. Schreiber's identity as Groboski's treating physician was disclosed five months before trial in Schatzlein's discovery petition, taken pursuant to Rule 201(b)(1). Defendant, however, chose not to depose Schreiber or any other physician or surgeon under Rule 204(c). Nevertheless, defendant was allowed to depose Schreiber before he was called as a witness and his records, which were minimal, were provided to defendant for the deposition. Further, Schreiber testified that he formed his opinions regarding Groboski's treatment based solely on her medical history, his experience and his initial observations of her, rather than the records provided by plaintiff's counsel. We note, also, that with information that Schreiber had treated Groboski, considering *Tzystuck*, it could be expected that Schreiber might offer expert opinion testimony at trial without being disclosed under Rule 220.

We conclude that the trial court did not err in determining that Schreiber was not subject to Rule 220(b)(1) disclosure. Accordingly, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, specially concurring:

Discovery is designed to illuminate the issues and evidence in the case, and in that manner promote a fair settlement or fair adjudication in the matter. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 282.) The value of the discovery process is reduced considerably, however, if counsel is not able to rely on the accuracy and thoroughness of the disclosures made by another party pursuant to appropriate discovery requests. Here, plaintiff's counsel failed to disclose Dr. Schreiber as a treating physician in response to the defendant's interrogatories. Later, plaintiff's counsel did not list Dr. Schreiber as a potential witness when the trial judge asked the parties, prior to trial, to identify their witnesses. Apparently, it was not until defense counsel saw Dr. Schreiber in the courthouse on the second day of trial that counsel had any inkling that he would be called to testify.

As our Rule 219(c) makes clear, a trial judge has a number of options in fashioning an appropriate remedy for a discovery violation. (134 Ill. 2d R. 219(c).) Particularly severe measures, such as the exclusion of evidence or the declaration of a mistrial, will be avoided if a less onerous alternative is sufficient. (See *People v. Eyler* (1989), 133 Ill. 2d 173, 221; *People v. Weaver* (1982), 92 Ill. 2d 545, 561; *Curran Contracting Co. v. Woodland Hills Development Co.* (1992), 235 Ill. App. 3d 406, 412.)

In the present case, the trial judge allowed defense counsel time during trial in which to depose Dr. Schreiber, believing that a deposition at that late date would be the proper remedy in the circumstances shown here.

One may question whether a midtrial deposition is generally an adequate remedy for a party's failure to disclose the identity of an important witness. By that time, of course, trial strategy has been set, opening statements have been made, and other witnesses have been examined. Although in this case Dr. Schreiber had been called to defense counsel's attention through the deposition testimony of another person, defense counsel's apparent belief that Dr. Schreiber would not be called to testify would only have been reinforced when plaintiff's counsel failed to include him as a potential witness in response to the trial judge's pretrial request for a list of witnesses.

Still, a trial judge enjoys broad discretion in deciding which remedy to impose for a discovery violation, and review of those determinations is heavily deferential. (See *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 369.) The trial judge's resolution of the problem here does not appear to have been an abuse of discretion, and for that reason I concur in the court's judgment in the present case.